William TYREE, Clark Ingram, James O. Green, Kenneth E. Wright, Donald E. Conner, Arlin A. DeChaney and International Union of Operating Engineers, Local 302, AFL–CIO, a labor union, Plaintiffs,

and

National Labor Relations Board, Plaintiff-intervenor,

v.

G. Kent EDWARDS, Attorney General of the State of Alaska; Thomas J. Moore, Commissioner of Labor of the State of Alaska; and Walter J. Hickel, Governor of the State of Alaska, Defendants.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 302, AFL–CIO, a labor union, Plaintiff,

v.

The ALASKA CHAPTER OF ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., an employer, Defendant,

and

State of Alaska, Defendant-intervenor.

Nos. J–18–67, J–19–67.

United States District Court
D. Alaska.

Aug. 1, 1968.

**590**

R. Boochever, Faulkner, Banfield, Boochever & Doogan, Juneau, Alaska, and J. Duane Vance (of Vance, Davies, Roberts & Bettis), Seattle, Wash., for plaintiffs.

Laurence H. Silberman, N. L. R. B., Washington, D. C., for plaintiff-intervenor.

G. Kent Edwards, Atty. Gen., for the State of Alaska, Juneau, Alaska, and Edgar Paul Boyko, Anchorage, Alaska, Special Counsel for State of Alaska, Boyko & Richey, Anchorage, Alaska, for defendants.

Before ELY, Circuit Judge, and PLUMMER and VON DER HEYDT, District Judges.

VON DER HEYDT, District Judge:

Plaintiffs seek a declaratory judgment decreeing Alaska's "Local Union Autonomy Act", as amended, to be unconstitutional, and a permanent injunction restraining enforcement thereof.

The causes have been consolidated by order of the Court for all proceedings subsequent to March 27, 1968. Prior to consolidation, an identical three judge district court, as provided by Title 28, U.S.C., Sec. 2284, had been designated by the Chief Judge of the Circuit to hear and determine the appropriate issues presented in each case.

The three judge court so designated convened to hear arguments on the merits at Juneau, Alaska, June 24, 1968, following which the Court took the cause under advisement.

The facts, briefly, are these. Plaintiffs are an international labor organization, Local 302, which is a member thereof, and individual members of the local union. The National Labor Relations Board has appeared as an Intervenor-Plaintiff. Defendants are the State of Alaska, its Governor, Attorney General, Commissioner of Labor, and the Alaska Chapter of Associated Con-

tractors of America, Inc., the latter designated as "an employer".

Local 302 is headquartered at Seattle, Washington, and does business in Alaska and Washington. A majority of its members reside outside the State of Alaska.

It appears that Alaska's Commissioner of Labor, over a period of time, has received numerous complaints that Local 302 discriminates against its Alaska resident members in job referrals, in favor of those members residing outside the State of Alaska. After legislative passage of the original Act in early 1967, a State Senate committee was established further to investigate the problem. By its report, dated July 17, 1967, the committee concluded that Local 302 in fact did discriminate against resident Alaska workers, and particularly against those who favored a local autonomous union, by dispatching nonresidents from Seattle to jobs in Alaska. Subsequent to this report, the 1968 Legislature enacted amendments to the local autonomy statute. The entire Act, as amended, is challenged here.

The Attorney General of Alaska brought both civil and criminal proceedings in the State Courts to enforce the Act. The civil proceeding resulted in an injunction entered by the Superior Court. The Attorney General of Alaska has stipulated to withhold prosecution of all state proceedings, pending this Court's decision on the issues before it.

We confine ourselves to a determination of two questions:

1. The constitutionality of Alaska Statutes, Sections 23.40.045 to 23.40.060, the so-called "Local Autonomy Act".
2. The validity of the injunction issued March 8, 1968, by the Superior Court of the State of Alaska, Third District of Alaska, at Anchorage.

The Local Autonomy Act, as amended, is as follows:

Sec. 23.40.045. RECORDS. (a) A person who or labor organization which operates a hiring-hall or furnishes labor exclusively under a labor-management contract and which does not have a chartered local in this state shall maintain accurate hiring, dispatching and membership records in accordance with regulations promulgated by the commissioner.

(b) The records required under (a) of this section shall be open to inspection by the commissioner or his authorized representative.

Sec. 23.40.050. LOCAL LABOR ORGANIZATIONS. It shall be unlawful for any national or international labor organization having 100 or more members in good standing who reside or work in Alaska not to have at all times one or more duly chartered and established local organizations in this state.

Sec. 23.40.052. INTERFERENCE IN CHARTERING PROHIBITED. It shall be unlawful for an officer of any national, international labor or local labor organization, having 100 or more members in good standing who reside or work in Alaska to wilfully discourage or impede or attempt to discourage or impede, by means of coercion or other unlawful act, the chartering and establishment of a local organization in this state in accordance with sec. 50 of this chapter. However, this section does not apply to a labor organization which has a chartered local in this state.

Sec. 23.40.054. CIVIL ENFORCEMENT. In addition to the criminal penalties provided for in this chapter, the attorney general may enforce the provisions of this chapter by appropriate civil proceedings, including injunctive relief, against threatened, repeated or continuous violations of this chapter or regulations adopted under it. These proceedings may be brought against an international, national or local labor organization or an officer of an international, national or local labor organization.

Sec. 23.40.056. EXEMPTIONS. (a) The commissioner may grant an

**592**

exemption from the provisions of secs. 45–60 of this chapter to a labor organization which

    (1) has so few members who reside in Alaska that chartering and operating a local would work a financial hardship on these members;

    (2) maintains local-hire preference provisions in all of its labor-management agreements in the state; or

    (3) maintains provisions in its constitution and bylaws for the election, by and from among the members of the organization who reside in Alaska, of a business agent or other person in charge of hiring-hall in Alaska, and dispatch and grievance procedures.

(b) Exemptions granted under this section shall be applied for and issued on an annual basis in accordance with regulations adopted by the department.

Sec. 23.40.060. PENALTIES. (a) Any national or international labor organization which violates sec. 50 of this chapter, upon conviction, is punishable by a fine of not less than $1,000 or more than $10,000.

(b) An officer of any national, international or local labor organization who violates sec. 52 of this chapter is punishable, upon conviction, by a fine of not more than $1,000 or by imprisonment of not more than one year, or by both.

(c) Failure to maintain accurate records in accordance with sec. 45(a) of this chapter and the regulations promulgated under it is a misdemeanor punishable by a fine of not more than

$10,000 or by imprisonment for not more than one year, or by both.

(d) Wilful failure to comply with sec. 45(b) of this chapter is a misdemeanor punishable by a fine of not more than $1,000 or by imprisonment for not more than one year, or by both.

Plaintiffs assert that the statute is unconstitutional because it:

1) conflicts with the National Labor Relations Act [1] and is thus unconstitutional under the Supremacy Clause.[2]

2) imposes an undue restraint upon interstate commerce.

3) impairs obligations of the Union's present contract with the Associated General Contractors.

4) violates the Equal Privileges and Immunities Clause.

5) impairs plaintiffs' right of free speech and assembly.[3]

Defendants contend that the Local Autonomy Act is a constitutional exercise of the State's police power, that it does not conflict with the National Labor Relations Act, and that the injunction of the Superior Court is valid and proper.

With this background in mind, we turn to the issues before us. We limit ourselves to plaintiffs' first asserted point, and decide whether the Act in question operates in an area pre-empted by Congress, and is therefore unconstitutional under the Supremacy Clause of the Constitution of the United States. We do so find.

        We quote first the "ground rules for preemption" noted by the United States Supreme Court:

The ground rules for preemption in labor law, emerging from our *Garmon*

---

1. 61 Stat. 136 (1947), as amended, 29 U.S. C. § 151 et seq. (1964).

2. U.S.CONST., art. VI, § 2.

3. Plaintiffs also contend that the statutes in question are unconstitutional because they are beyond the power of the State to legislate as an attempted regulation

of the internal affairs of unincorporated associations, unwarranted by the proper exercise of any police power, and because they are unduly vague and uncertain. These contentions have not been pursued in subsequent pleadings and it is assumed they have been abandoned.

decision (359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775), should first be briefly summarized: in general, a State may not regulate conduct arguably "protected by § 7, or prohibited by § 8" of the National Labor Relations Act * * *. [T]he greatest threat against which the *Garmon* doctrine guards * * * [is] a State's prohibition of activity that the Act indicates must remain unhampered.[4]

Local regulation is invalid if it does or may conflict with federal legislation or policy.[5]

Plaintiffs assert that the statutes in question conflict with the National Labor Relations Act,[6] and cite Hill v. State of Florida.[7] In *Hill* a Florida statute which precluded a convicted felon from serving as a union business agent was declared unconstitutional. The Supreme Court held that the statute interfered with the employees' freedom of choice in selecting a collective bargaining agent, and that such a provision "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[8] Moreover, since an employer could not bargain with a duly selected representative of the workers unless the union had complied with the Florida statute, it impermissibly interfered in the collective bargaining process.[9] Finally, the Florida statute was held unconstitutional because the union could be enjoined for failure to comply with its record-keeping requirements. Each of these factors is present in this case.

However, defendants contend that *Hill* has, for all practical purposes, been overruled by De Veau v. Braisted.[10] The local statute in *De Veau*, which was similar to the *Hill* provision, was upheld by the Supreme Court. We disagree with defendants' contention.

The legislation in *De Veau* was the result of investigations by law enforcement agencies of New York and New Jersey of corruption and crime on the waterfront, and hearings based on the report of the New York Crime Commission. This compact was submitted to Congress for approval. After conducting an independent investigation Congress approved the compact. As the Supreme Court itself noted, this background distinguishes *De Veau* from *Hill*:

> The decision in Hill v. State of Florida * * * in no wise obstructs this conclusion. An element most persuasive here, congressional approval of the heart of the state legislative program explicitly brought to its attention, was not present in that case. Nor was it true of Hill v. State of Florida, as it is here, that the challenged state legislation was part of a program, fully canvassed by Congress through its own investigations, to vindicate a legitimate and compelling state interest, namely, the interest in combatting local crime infesting a particular industry.[11]

If any doubt persists as to the vitality of the *Hill* decision it should be dispelled by the Supreme Court's recent

---

4. Hanna Mining Co. v. District 2, Marine Engineers Beneficial Ass'n, 382 U.S. 181, 187, 193, 86 S.Ct. 327, 330, 15 L.Ed.2d 254 (1965).

5. E. g., Colorado Anti-Discrimination Comm'n v. Continental Air Lines, Inc., 372 U.S. 714, 722, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963); San Diego Building Trades Council v. Garmon, 359 U.S. 236, 242, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

6. Supra, note 1.

7. 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945).

8. Id. at 542, 65 S.Ct. at 1375.

9. Here, the union has brought an action for breach of contract against the Alaska Chapter of the Associated General Contractors, which organization declined to honor its contracts with Local 302 until the latter had complied with the Local Autonomy Act.

10. 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

11. Id. at 155, 80 S.Ct. at 1152.

reaffirmance of that case in Nash v. Florida Industrial Commission.[12]

We conclude that the statutes comprising the Local Autonomy Act, and regulations relating thereto, clearly indicate a state purpose which invades a field preempted by Congress. Impermissibly, the Act interferes with the full freedom of workers to choose a bargaining agent and in the collective bargaining process.[13] Because of conflict with federal law and policy, both actual and potential, the Act, as amended, is therefore unconstitutional under the Supremacy Clause.[14]

This conclusion obviates the necessity to consider other serious constitutional issues raised by plaintiffs, and we reserve decision as to those questions.[15]

We now turn to the Superior Court's injunction.

On March 8, 1968, the Court granted a preliminary injunction sought by the State. It provides that the union shall not

1) operate its hiring-hall or dispatch members in a discriminatory manner.

2) violate a member's seniority preference under existing collective bargaining agreements.

3) grant an employment preference not based on contract seniority rights to non-Alaska resident members.

Defendants contend that the discrimination which is prohibited by the injunction constitutes a breach of the union's duty to fairly represent its workers, and is permissible under the Supreme Court's recent decision in Vaca v. Sipes,[16] regardless of the Local Autonomy Act. Plaintiffs argue that this preliminary relief, by itself, encroaches on the preemptive sphere of the National Labor Relations Act, since the Board has exclusive jurisdiction to remedy the type of discrimination alleged in the Superior Court proceeding.

In *Vaca,* the Court held that a state court has jurisdiction of a worker's suit for a union's breach of its statutory duty of fair representation. The breach of duty which the union member alleged was the union's failure to take his grievance to arbitration under the bargaining agreement's grievance procedure.

We consider now the question of whether the discrimination here alleged is a breach of the duty to fairly represent under the *Vaca* ruling, noting the following language:

A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, *discriminatory,* or in bad faith.[17]

Two factors on which the *Vaca* decision relies are present here.

First, the Court noted that the Board's General Counsel has unreviewable discretion to decide whether to institute an unfair labor practice complaint, thus leaving a union member without remedy upon his charge that the union breached its duty to fairly represent him. Second, fair representation suits are often intimately related to suits under § 301 of the Labor Management Relations Act charging an employer with breach of its

12. 389 U.S. 235, 240, 88 S.Ct. 362, 19 L. Ed.2d 438 (1967).

13. See Hill v. State of Florida, note 7 supra; Local 24, International Bhd. of Teamsters v. Oliver, 358 U.S. 283, 79 S. Ct. 297, 3 L.Ed.2d 312 (1959).

14. Nash v. Florida Industrial Commission, note 12 supra; Hill v. State of Florida, note 7 supra.

15. See, e.g., Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); Garner v. State of Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944); McNamara v. Remenyi, 391 F.2d 128 (9th Cir. 1968).

16. 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

17. Id. at 190, 87 S.Ct. at 916 (emphasis added).

contract, an action for which state courts have jurisdiction. Here, the Union has already instituted such an action against the Alaska Chapter of Associated General Contractors of America, Inc.[18]

■ However, there remains one significant difference between *Vaca* and the instant case which we believe to be determinative: the type of discrimination alleged. In *Vaca*, the Court was concerned with discriminatory cases "where it could not fairly be inferred that Congress intended exclusive jurisdiction to lie with the NLRB".[19] Clearly, the Court did not intend that state courts were henceforth to have concurrent jurisdiction with the National Labor Relations Board of all unfair labor practice proceedings in which discriminatory conduct is alleged.[20] The alleged discrimination which is here prohibited by the Superior Court injunction—job referral discrimination to strengthen union authority—clearly is within the exclusive jurisdiction of the National Labor Relations Board.[21] Such discrimination constitutes a violation of Section 8(b) (1) (A) of the National Labor Relations Act.[22] It follows, therefore, that the Superior Court was without jurisdiction to grant the preliminary injunction.

We find that all concerned—the public, labor, and employers, are most efficiently served by authority vested by Congress in one federal agency, empowered to reach across the entire nation and bring national consistency to the broad field of labor relations and the related complex problems arising thereunder. The result would be chaotic in the absence of such a consistent policy. Certainly it is not intended that each of the hundreds of state courts of the several states be at liberty, individually, to decide these issues, national in scope and implication. Congress so empowered the National Labor Relations Board, and to that agency, for these purposes, it granted exclusive jurisdiction.

The foregoing makes it clear that we have rejected the contention that this court should await a determination by Alaska's highest court as to whether or not the legislation harmonizes with the federal constitution. We already have recited that criminal proceedings have been instituted. There exists the threat of contempt citations under the state court injunction. Since the question is so clearly free of doubt, the Alaskan courts should, in our judgment, be immediately relieved of additional burdens in connection with the problem, and the plaintiffs, also, should not be required unnecessarily to undergo the vexations and expense of different proceedings in the state courts, which, in the end, would have served no useful purpose.

The enforcement of the Superior Court's preliminary injunction in Cause No. 67–2024E, Superior Court for the State of Alaska, Third Judicial District, entered on March 8, 1968, is permanently enjoined.

All officers, agents, or employees of the State of Alaska are permanently enjoined from enforcing A.S. § 23.40.045 to 23.40.060, and the regulations promulgated thereunder, or from initiating or prosecuting any proceeding under purported authority of the same.

18. See note 9 supra.

19. 386 U.S. at 179, 87 S.Ct. at 911.

20. This conclusion is supported by the Supreme Court's reference to the *Garmon* principle, see note 4 supra and accompanying text, as "a general rule". 386 U.S. at 179, 87 S.Ct. 903. *Vaca* does, however, seem to leave undecided the standard for determining when it can be fairly inferred that Congress intended exclusive jurisdiction to lie with the National Labor Relations Board. Compare *Vaca v. Sipes*, note 16 supra, with Local 100 of the United Association of Journeymen and Apprentices v. Borden, 373 U.S. 690, 694, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963).

21. Local 100 of the United Association of Journeymen and Apprentices v. Borden, note 16 supra.

22. 29 U.S.C. § 158(b) (1) (A) (1964).

This opinion may constitute findings of fact and conclusions of law as provided by Rule 52, Federal Rules of Civil Procedure. Plaintiffs' counsel may prepare an appropriate form of judgment.