# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 26, 2018          Decided March 30, 2018

No. 17-1102

PUBLI-INVERSIONES DE PUERTO RICO, INC., D/B/A EL VOCERO
DE PUERTO RICO,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 17-1141

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

Alberto J. Bayouth-Montes argued the cause for petitioner. With him on the briefs was Yldefonso López-Morales.

Kellie J. Isbell, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were Richard F. Griffin, Jr., General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, and Julie B. Broido, Supervisory Attorney.

Before: GARLAND, *Chief Judge*, and SILBERMAN and
SENTELLE, *Senior Circuit Judges.*

Opinion for the Court filed by *Senior Circuit Judge*
SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Publi-Inversiones
Puerto Rico, Inc. ("PI"), purchased the equipment and
intellectual property of a bankrupt newspaper in a Chapter 7
asset sale. It subsequently hired some of the bankrupt
company's employees and began to publish its own version of
the newspaper. The Unión de Periodistas, Artes Gráficas y
Ramas Anexas, Local 33225 – which had represented some
employees of the bankrupt company – alleged that PI was a
successor employer and thus violated Sections 8(a)(5) and (1) of
the National Labor Relations Act[1] by refusing to recognize and
bargain with the union. The NLRB concluded that PI met the
legal standard for successorship, and ordered it to engage in
collective bargaining as required by the Act. PI petitions for
review, claiming that the changes it made to the publishing
business rebutted the Board's finding of substantial continuity
between the two companies. It contends, moreover, that the
former employees it hired did not constitute a majority of the
relevant bargaining unit, primarily because it hired a number of
additional employees in part-time roles. We deny PI's petition
and grant the Board's cross-application for enforcement because
we think the Board's finding of successorship is amply
supported.

---

[1] 29 U.S.C. § 158(a)(1), (5).

**I.**

For decades, Caribbean International News Corporation generated and published a Spanish-language newspaper called *El Vocero* at its facilities located in Puerto Rico. The company also intermittently published several "magazines," which it printed on the same type of paper as *El Vocero* and distributed along with that newspaper. It employed workers in thirteen departments: administration, personnel, workshop, photography, classified, circulation, reception, guards, editorial, sales, accounting, press, and dispatch. It also paid external organizations to provide subcontracted "inserters" – workers who physically placed advertisements, sales flyers, and the supplemental magazines into copies of *El Vocero*.

Since at least 1975, the union represented many of the employees of Caribbean International. The bargaining unit, as defined by the most recent collective bargaining agreement, included all employees of Caribbean International with the exception of certain specific positions, such as executives and supervisors. But inserters were neither employees of the company nor members of the bargaining unit.

In September 2013, Caribbean International filed for bankruptcy, and several months later, the company was liquidated under Chapter 7 of the Bankruptcy Code. PI purchased its assets as the sole bidder at the public sale. Soon thereafter, the new company notified employees that they could apply for employment. PI explained changes in work rules, compensation schemes, dress code, and other policies during the application process and then hired approximately 100 employees. It is undisputed that 24 of these were bargaining-

unit members formerly employed by Caribbean International. In all, 36 of the newly hired employees – including the 24 previous employees – occupied jobs that were included in the previous bargaining unit. (Another group of employees held positions that were clearly outside the bargaining unit, such as managers, supervisors, administrative employees, salespersons, and security guards.) Most important for this case, PI also hired, as regular part-time employees, a group of inserters whose number fluctuated between 27 and 51. If these part-timers were included in the bargaining unit, the previous employees would no longer constitute a majority.

*El Vocero* underwent some changes. PI updated the newspaper's logo, font, and color scheme, adopted a new printing method, and added the slogan "La verdad no tiene precio" ("Truth has no price") to its cover page. It also began to publish several new magazines. These included *Mírame* and *Zona Sport*, which were sold separately for $2.50 apiece. Unlike the previous newsprint "magazines" that Caribbean International had inserted into *El Vocero*, these new magazines were printed on glossy paper and included full-page, high-resolution action photographs with headlines such as "UNA BESTIA LLAMADA GRONK" ("A BEAST NAMED GRONK"). JA 584. PI also modified the company's organizational structure and reporting hierarchy and changed the Board of Directors.

Less than a month after PI acquired the newspaper's assets, the union sent a letter attempting to schedule a meeting to initiate negotiations on a new collective-bargaining agreement. It also requested information about the new company's organizational structure and its employees. The company responded by declining to either begin negotiations or provide the requested information. The union then filed a charge that the company had violated the NLRA by refusing to bargain as a

successor and by "blacklisting" unit employees of the predecessor because of their support for the union. The NLRB's Regional Director dismissed both of these claims, finding that the evidence was insufficient to support either. The union appealed the decision, and on remand from the General Counsel's Office of Appeals, the dismissal of the successorship claims was withdrawn.

In October 2015, the General Counsel filed a complaint. An administrative law judge found that PI was, in fact, a successor to Caribbean International under the applicable legal standards and, therefore, the company had violated the Act by refusing to negotiate with or provide information to the union. The Board affirmed the findings and recommendations of the administrative law judge. (Upon the motion of its General Counsel, the Board issued an order modifying the scope of the union's bargaining unit to explicitly exclude the inserters.) PI refused to bargain and filed its petition for review.

## II.

The Supreme Court has endorsed the Board's presumption of majority support for a union when three criteria of successorship are met: "substantial continuity" between the two enterprises, the presence within the bargaining unit of a majority of employees who had previously worked for the predecessor, and the existence of an ongoing demand for collective bargaining on the part of the union. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 42-54 (1987). The union's continuing demand in this case is undisputed.

Although Petitioner makes much of superficial changes in its business model, we are quite unimpressed. Certainly that it changed the Board of Directors, adopted a new title for reporters

(. . . "mega-reporters"), purchased a new copy machine, and adopted a new motto for the paper cannot possibly be thought the kind of business changes that defeat a finding of continuity.

Petitioner's slightly more substantial argument is that its hiring of regular part-time inserters, relatively unskilled workers who insert advertisements and magazines into the folds of the paper, expands the number of employees in the previous bargaining unit so that a majority are new employees. (It will be recalled that the previous owner had also used inserters, but they were provided by an independent contractor.) As we noted, if the inserters were combined with the 24 former unit members, the total number is 86, so that the former unit members would no longer be a majority – a *Fall River* successorship requirement.

Petitioner's difficulty is that the Board is never required to determine the *most* appropriate unit, only *an* appropriate unit. *Serramonte Oldsmobile, Inc. v. NLRB*, 86 F.3d 227, 236 (D.C. Cir. 1996); *see also Blue Man Vegas, LLC v. NLRB*, 529 F.3d 417, 420-23 (D.C. Cir. 2008). The inserters work under significantly different conditions. They are less skilled part-time employees, not even covered under the company's health plan. Indeed, their wages are almost 50 percent lower than the lowest paid prior unit employee. Credited testimony before the ALJ revealed they were not even permitted to speak to the full-time employees. It is, therefore, rather obvious that the Board, if it were deciding this case initially – not as a successorship – could easily conclude that *an* appropriate unit could exclude the part-time inserters even without the prior bargaining history. *Blue Man Vegas*, 529 F.3d at 421. But prior bargaining history, either in an initial representation case or a successorship case, is an additional factor the Board is entitled to consider in

determining whether a unit is *an* appropriate unit,[2] and "[i]n most cases, a historical unit will be found appropriate if the predecessor employer recognized it, even if the unit would not be appropriate under Board standards if it were being organized for the first time." *Trident Seafoods*, 101 F.3d at 118. Indeed, in *Trident*, the only one of three units challenged by the successor employer that we concluded was clearly inappropriate was a group of processors whose only distinction from other processors (represented by a different union) was their place of hire.[3]

The Board's counsel suggested that in a successorship case the Board's standard for determining whether a unit is appropriate is less exacting than in an initial representation case. But we think in any case – whether involving a successor or not – if a unit sought by a union has a prior bargaining history the Board can, legitimately, weigh that factor heavily. In other words, in a successorship case, as in any representation case, a historical unit can be rejected only if "truly inappropriate." *Blue Man Vegas*, 529 F.3d at 421; *see also Trident Seafoods*, 101 F.3d at 118.

\* \* \*

---

[2] *See, e.g.*, *Blue Man Vegas*, 529 F.3d at 421 (citing *Trident Seafoods*, 101 F.3d at 118 n.11; *Agri Processor Co., Inc. v. NLRB*, 514 F.3d 1, 9 (D.C. Cir. 2008); *NLRB v. Lundy Packing Co.*, 68 F.3d 1577, 1580 (4th Cir. 1995)).

[3] That reflected the rivalry between unions located in Seattle and those based in Alaska. *See Tyree v. Edwards*, 287 F.Supp. 589, 590-91 (D. Alaska 1968), *aff'd*, 393 U.S. 405 (1969).

Because the Board's determination that PI met the criteria of successorship was supported by substantial evidence, we deny PI's Petition for Review and grant the Board's Cross-Application for Enforcement.[4]

*So ordered.*

---

[4] We find no merit in Petitioners' allegations of bias on the part of the Board or objections to the Board's April 25 correction of its March 10 Decision and Order.