NASH *v.* FLORIDA INDUSTRIAL
COMMISSION ET AL.

No. 48. Argued November 9, 1967.—Decided December 5, 1967.

*Michael H. Gottesman* argued the cause for petitioner. With him on the briefs were *Bernard Kleiman, Elliot Bredhoff, George H. Cohen, Jerome Cooper* and *Neal Rutledge.*

*Glenn L. Greene, Jr.,* argued the cause and filed a brief for respondents Stanley Works et al.

*Solicitor General Marshall, Robert S. Rifkind, Arnold Ordman, Dominick L. Manoli* and *Norton J. Come* filed a memorandum for the National Labor Relations Board, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

Section 10 of the National Labor Relations Act, 49 Stat. 453, as amended, 29 U. S. C. § 160, authorizes the National Labor Relations Board to initiate unfair labor practice proceedings whenever some person charges that another person has committed such practices. The Board cannot start a proceeding without such a charge being filed with it. See, *e. g., National Labor Relations Board* v. *National Licorice Co.,* 104 F. 2d 655 (C. A. 2d Cir.),

modified on other grounds, 309 U. S. 350; *Local 138, Operating Engineers (Skura)*, 148 N. L. R. B. 679, 681. The crucial question presented here is whether a State can refuse to pay its unemployment insurance to persons solely because they have preferred unfair labor practice charges against their former employer.

The facts are stipulated and need not be stated at length. The petitioner, Mrs. Nash, who previously had been out on strike against her employer, the Stanley Works and Stanley Building Specialties, was, pursuant to union-management agreement, reinstated to her former job on April 14, 1965. Approximately five weeks later, on May 16, 1965, she was laid off by the company because of alleged "slow production," meaning that the company had insufficient work to warrant her retention. Mrs. Nash was unemployed from this time until October 5, 1965, when the company voluntarily called her back to work. She has been allowed unemployment compensation, under Florida Statutes, chapter 443, from the time of her discharge on May 16, up to June 17, but denied any compensation from June 17 to October 5. The reason given for this denial was that on June 17 she filed an unfair labor practice charge against her employer seeking reinstatement and back pay on the ground that the employer had actually laid her off because of her union activities in violation of the National Labor Relations Act, and that this charge was still pending on October 5 when she resumed work. In making this ruling the Florida Industrial Commission relied on § 443.06 of the Florida Unemployment Compensation Law which provides:

> "An individual shall be disqualified for [unemployment] benefits . . . . (4) For any week with respect to which the commission finds that his total or partial unemployment is due to a labor dispute in

active progress which exists at the factory, establishment or other premises at which he is or was last employed . . . ."

The Commission held that the filing of the unfair labor practice charge brought petitioner within the wording of the Act in that her "unemployment" then became "due to a labor dispute." Thus the sole reason that petitioner was disqualified from compensation was that she filed an unfair labor practice charge. According to the Commission, the act of filing was the determinative factor under Florida law which rendered petitioner ineligible for unemployment compensation. The District Court of Appeal of Florida, Third District, denied *per curiam* petitioner's application for writ of certiorari to review the determinations of the Florida Industrial Commission Unemployment Compensation Board of Review. Since such denial by the Florida District Court of Appeal apparently precludes further state review,[1] we granted certiorari because of the important constitutional question involved, specifically whether the Commission's ruling violates the Supremacy Clause of the Constitution (Art. VI, cl. 2) because it allegedly "frustrates" enforce-

---

[1] The Florida Supreme Court seems to have decided that it lacks jurisdiction by appeal to consider *per curiam* denials of certiorari by the Florida District Court of Appeal. *Callendar* v. *State,* 181 So. 2d 529. While it is true that a district court of appeal may certify a question "of great public interest" to the Florida Supreme Court, this is done upon the district court of appeal's own motion, and although litigants may file a suggestion that a particular question be certified, such suggestion has been declared to have "no legal effect." See *Whitaker* v. *Jacksonville Expressway Authority,* 131 So. 2d 22 (1st D. C. App. Fla. 1961). Thus, it is impossible for us to say that under Florida law petitioner here had any right to call upon the State Supreme Court for review. In these circumstances, we therefore are unable to say that the District Court of Appeal was not the highest court in Florida wherein a decision could be had as required by 28 U. S. C. § 1257 (3).

ment of the National Labor Relations Act, 49 Stat. 449, 29 U. S. C. § 151 *et seq.*[2]

The National Labor Relations Act is a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce. As such it is of course the law of the land which no state law can modify or repeal. Implementation of the Act is dependent upon the initiative of individual persons who must, as petitioner has done here, invoke its sanctions through filing an unfair labor practice charge.[3]   Congress has made it clear that it wishes all persons with information about such practices to be completely free from coercion against reporting them to the Board.   This is shown by its adoption of § 8 (a)(4) which makes it an unfair labor practice for an employer to discriminate against an employee because he has filed charges.   See *John Hancock Mutual Life Insurance Co.* v. *National Labor Relations Board,* 89 U. S. App. D. C. 261, 263–264, 191 F. 2d 483, 485–486; *National Labor Relations Board* v. *Lamar Creamery Co.,* 246 F. 2d 8, 9–10 (C. A. 5th Cir.); *National Labor Relations Board* v. *Syracuse Stamping Co.,* 208 F. 2d 77, 80 (C. A. 2d Cir.). And it has been held that it is unlawful for an employer to seek to restrain an employee in the exercise of his right to file charges.   *National Labor Relations Board* v. *Clearfield Cheese Co.,* 213 F. 2d 70 (C. A. 3d Cir.); *National Labor Relations Board* v. *Gibbs Corp.,* 308 F. 2d 247 (C. A. 5th Cir.); *Roberts* v. *National Labor Relations Board,* 121 U. S. App. D. C. 297, 350 F. 2d 427.

---

[2] Because of our disposition of the case on Supremacy Clause grounds, we need not consider petitioner's alternative argument that such ruling violates her privileges and immunities of United States citizenship in contravention of the Fourteenth Amendment.

[3] Although § 10 (a) of the Act empowers the Board to prevent unfair labor practices, and thus to protect the employees' § 7 rights, § 10 (b) conditions the exercise of that power on the filing of charges; the Board cannot initiate its own processes.

We have no doubt that coercive actions which the Act forbids employers and unions to take against persons making charges are likewise prohibited from being taken by the States. The action of Florida here, like the coercive actions which employers and unions are forbidden to engage in, has a direct tendency to frustrate the purpose of Congress to leave people free to make charges of unfair labor practices to the Board. Florida has applied its Unemployment Compensation Law so that an employee who believes he has been wrongly discharged has two choices: (1) he may keep quiet and receive unemployment compensation until he finds a new job or (2) he may file an unfair labor practice charge, thus under Florida procedure surrendering his right to unemployment compensation, and risk financial ruin if the litigation is protracted. Even the hope of a future award of back pay may mean little to a man of modest means and heavy responsibilities faced with the immediate severance of sustaining funds. It appears obvious to us that this financial burden which Florida imposes will impede resort to the Act and thwart congressional reliance on individual action. A national system for the implementation of this country's labor policies is not so dependent on state law. Florida should not be permitted to defeat or handicap a valid national objective by threatening to withdraw state benefits from persons simply because they cooperate with the Government's constitutional plan.[4]

In holding that this Florida law as applied in this case conflicts with the Supremacy Clause of the Consti-

---

[4] Respondents suggest that petitioner might enjoy a windfall if she was paid compensation and was subsequently awarded back pay by the Labor Board. This argument is unresponsive to the issue in dispute, however, since a State is free to recoup compensation payments made during any period covered by a back-pay award. See *National Labor Relations Board* v. *Gullett Gin Co.*, 340 U. S. 361, 365, n. 1.

tution we but follow the unbroken rule that has come down through the years.

In *McCulloch* v. *Maryland,* 4 Wheat. 316, 436, decided in 1819, this Court declared the States devoid of power "to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." In *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, decided in 1896, this Court declared that a state law cannot stand that "either frustrates the purpose of the national legislation or impairs the efficiency of those agencies of the Federal government to discharge the duties, for the performance of which they were created." *Id.,* at 283. And again in *Hill* v. *Florida,* 325 U. S. 538, 542–543, decided in 1945, this Court struck down a labor regulation saying it stood " 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. . . .' " *Id.,* at 542.

All of the cases just cited and many more support our invalidation under the Supremacy Clause of the Florida Unemployment Compensation Law as here applied.

*Reversed.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.