Michael F. SALANDICH, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

MILWAUKEE COUNTY, a municipal corporation, et al., Defendants.

Civ. A. No. 71-C-92.

United States District Court,
E. D. Wisconsin.

Dec. 26, 1972.

Steven H. Steinglass and Richard M. Klein, Freedom Through Equality, Inc., Milwaukee, Wis., for plaintiffs.

James J. O'Donnell, Deputy Corporation Counsel, Milwaukee, Wis., for defendants.

OPINION AND ORDER

REYNOLDS, District Judge.

This class action challenges the failure of Milwaukee County to provide those who have been participating in the Milwaukee County Work Experience and Training Projects Division (hereafter "WETPD") with a statement of reasons and an evidentiary hearing before their eligibility for continued participation in the program or for general welfare relief is terminated.

Plaintiff Michael F. Salandich was employed under WETPD and was thereafter terminated from that employment and denied general welfare relief without a statement of reasons or a hearing. On behalf of himself and all others similarly situated, he brings this action pursuant to 42 U.S.C. § 1983 and moves for a preliminary injunction. Defendants are Milwaukee County itself, the chief administrators of WETPD, and the Milwaukee County Department of Public Welfare.

On the basis of the uncontested facts and the arguments presented, I find there is a strong likelihood that the actions of defendants violate the due proc-

ess clause of the Fourteenth Amendment, and that plaintiff will suffer irreparable injury if a preliminary injunction is not granted. Accordingly, plaintiff's motion is granted.

## FINDINGS OF FACT

WETPD was created pursuant to Milwaukee County Ordinance §§ 50.01–50.11. The objective of the division, as stated in § 50.02(1), is to provide work experience for those receiving public assistance and to place them in "verified employment so as to permit them to attain a status of self-sufficiency and independence." WETPD is financed by the county alone.

Under the ordinance all persons found eligible for general welfare relief by the Department of Public Welfare are referred to WETPD. The administrators of WETPD then determine whether they are fit for a work experience assignment. Those fit are referred to openings in either a verified position in private industry or an unclassified position with the county. The welfare department case records of those who are employed will be formally closed out once their income from the employment makes them ineligible for relief.

Section 50.02(2) specifically provides that no person employed by the county under WETPD shall replace a civil service employee. All persons participating in WETPD are paid at the rate of $1.60 per hour. Social Security, state, and federal taxes are withheld from their weekly paychecks. Although they are not eligible for unemployment compensation or most of the fringe benefits of civil servants, they are eligible for workmen's compensation and for special fringe benefits such as the following:

(a) Paid in full for time off for job searching in private employment sector up to a maximum of twenty hours per month;

(b) Work clothes allowance for those persons exposed to inclement weather;

(c) Work clothes allowance for those persons holding positions requiring uniforms; and

(d) Two-week transportation allowance provided to employee during the initial two-week period of employment.

It is the practice of the Department of Public Welfare to provide those persons receiving general relief with a statement of reasons and an evidentiary hearing before such relief is terminated. But those persons whose employment under WETPD is terminated because of their alleged failure to perform properly are not given a statement of reasons for their termination or an evidentiary hearing. Nor are they provided general welfare relief pending a determination, pursuant to a statement of reasons and a hearing, that they are ineligible for such relief. In short, they are not provided any assistance or a hearing on their eligibility for any assistance.

To receive general relief they must reapply as new applicants. Furthermore, § 50.03(c) of the ordinance requires the projects director of WETPD to report their prior termination of employment to the director of the Department of Public Welfare who must evaluate it in determining their present eligibility. New applicants who are found ineligible for general relief are not provided with a statement of reasons for their ineligibility or an evidentiary hearing.

## CONCLUSIONS OF LAW

In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held the constitutional standard of due process required that welfare recipients be afforded a statement of reasons and an evidentiary hearing before termination of benefits. The Court found that procedural due process applied because the benefits were "a matter of statutory entitlement for persons qualified to receive them." Goldberg v. Kelly, supra, at 262, 90 S.Ct. at 1017; *accord* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 30 L.Ed.2d 548 (U.S., decided June 29, 1972). To determine the particular process that was due, the Court balanced the recipient's interest in receiv-

ing benefits against the government's interest in summary adjudication. It concluded that although administrators could terminate some governmental benefits summarily, only a pre-termination evidentiary hearing provided a welfare recipient with procedural due process:

"  *   *   *  For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. Cf. Nash v. Florida Industrial Commission, 389 U.S. 235, 239, 88 S.Ct. 362, 366, 19 L.Ed.2d 438] (1967). Thus the crucial factor in this context—a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.

"Moreover, important governmental interests are promoted by affording recipients a pre-termination evidentiary hearing. * * * The same governmental interests that counsel the provision of welfare, counsel as well its uninterrupted provision to those eligible to receive it; pre-termination evidentiary hearings are indispensable to that end.

"Appellant does not challenge the force of these considerations but argues that they are outweighed by countervailing governmental interests in conserving fiscal and administrative resources. These interests, the argument goes, justify the delay of any evidentiary hearing until after discontinuance of the grants. * * *

"We agree with the District Court, however, that these governmental interests are not overriding in the welfare context. * * * As the District Court correctly concluded, '[t]he stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal.' [Kelly v. Wyman, D.C., 294 F.Supp. 893,] 294 F.Supp., at 904–905." Goldberg v. Kelly, 397 U.S. at 264–266, 90 S.Ct. at 1018.

The stakes for the plaintiff here in continuing his employment under WETPD or, failing that, in receiving general relief are just as high. As in Goldberg, the "overpowering fact which controls" is that the plaintiff will be destitute, without funds or assets," if all his assistance is terminated. Kelly v. Wyman 294 F.Supp. 893, 899 (1968), cited with approval in Goldberg v. Kelly, 397 U.S. 254, 261, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Whether the assistance takes the form of employment or general relief is not necessarily crucial to the need for a pre-termination hearing.

Though nominally separate, WETPD and the welfare program are plainly related. The facts indicate that employment under WETPD differs from ordinary employment in private industry and from unclassified civil service in that it more closely resembles a form of welfare assistance. WETPD does not function merely as an employment agency. It continues to oversee and report on those it places. The terms and conditions of the employment it provides also differ from those of others performing the same type of work. Since, for example, WETPD workers are not eligible for unemployment compensation, the loss of their employment is more serious for them than for the other employees. Since they have already been found eligible for general relief, their lack of

other assets is more clearly established. In arguing that plaintiff need not be granted a pre-termination hearing because ordinary employees in like positions need not be (if that is the case), defendants ignore the differences in employment under WETPD as well as the specific function of such employment as a substitute and supplement to statutorily required welfare relief.

Plaintiff asks for a ruling requiring all of the following:

.1. A pre-termination hearing like that described in Goldberg on the basis for terminating employment;

2. Interim general relief after the employment is terminated until the recipient is given another hearing on the basis for denying him general relief; and

3. A post-denial hearing whenever the application of a new applicant for general relief is denied.

■ Since plaintiff represents the class of persons who have participated in WETPD, I need not decide his third request which concerns the rights of all new applicants. Courts should not " 'anticipate a question of constitutional law in advance of the necessity of deciding it' " or " 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346–347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); Liverpool, N. Y. & P. S. S. Co. v. Emigration Commissioners, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885). Moreover the issue of whether all new applicants who have been denied general relief are entitled to a hearing has been more concretely presented to this court by welfare applicants not connected to WETPD in the pending case. Alexander v. Silverman, No. 71–C–565 (filed Oct. 29, 1970).

■ Since in granting injunctions a court must specifically describe the acts enjoined, it is necessary to make a preliminary determination of the procedural safeguards defendants must provide to those employed under WETPD to comply with due process. Rule 65(d) of the Federal Rules of Civil Procedure. I conclude that defendants must provide those whose employment under WETPD has been terminated with the welfare relief for which they were originally eligible until defendants determine, following the procedures required in Goldberg, that they are no longer eligible.

A pre-termination hearing which focuses only on the basis for terminating the recipient's employment under WETPD is not adequate. That there are grounds for terminating a recipient's employment in no way means that he is ineligible for general relief. Under the present practice, terminating his employment cuts off all his welfare assistance. The effect of this is that general relief is then cut off without the recipient, who had once shown his eligibility for such relief, ever receiving a hearing on his continued eligibility.

The Supreme Court in Goldberg concluded that the government rather than the recipient should bear the expense caused by the delay in providing hearings on welfare eligibility because the recipient was likely to be destitute once the relief was ended. The same rationale compels the defendants here to provide plaintiff general relief pending a later decision that he is ineligible. The plaintiff was destitute before he began his employment. He is ineligible for unemployment compensation. I also take judicial notice that he is unlikely to have accumulated substantial savings from his past wages of $1.60 an hour. The only burden on defendants of providing general relief in this .interim, besides the expense, is that they will no longer be able to discipline workers and to close out the welfare case records of those, like plaintiff, who were employed under WETPD. In comparing the plaintiff's interest in receiving general relief immediately with the government's interest in delaying relief until he reapplies as a new applicant, plaintiff's interest pre-

dominates here as did that of the welfare recipient in *Goldberg*.

I do not decide today that, pending a later determination of eligibility, general relief must be granted to anyone who can show that his loss of employment will immediately make him destitute. I do decide that when the employment is assigned by the government under a program as interrelated with welfare as is WETPD, then those whose employment is terminated should receive the same interim assistance pending an updated determination of their welfare eligibility, that they would have received had their assistance always taken the form of general relief. Working under WETPD should not jeopardize a recipient's interest in some form of continued assistance. Those employed under WETPD who leave that employment for other positions which are later lost will be treated as new applicants. It is the interrelationship between WETPD and the welfare program, as well as the likely destitution of those terminated from WETPD, that prohibits welfare officials from washing their hands of WETPD's participants.

Once those terminated from WETPD are provided the relief for which they were originally eligible, the welfare officials are then free to cut off that relief by determining, pursuant to the procedures described in *Goldberg*, that the recipients are presently ineligible. If interim relief is provided, I do not believe that plaintiff has made a strong showing that a hearing on the basis for terminating the recipients' employment is also required. Unlike welfare benefits, employment under WETPD is not a matter of statutory entitlement for those who qualify. See Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Barnett v. Lindsay, 319 F. Supp. 610, 612 (D.C.,1970). In addition, the government has a greater interest in avoiding these hearings than it has in avoiding hearings on welfare eligibility. Many of the employees under WETPD are placed with private companies. Indeed, persuading private companies to cooperate is important to WETPD's success. But requiring evidentiary hearings on the basis for a WETPD employee's termination will necessarily tax the time and energy of the companies' other personnel and make cooperation with WETPD less desirable and less likely.

It is therefore ordered that defendants and all others acting in concert with them are preliminarily enjoined from denying to persons whose employment under the Milwaukee County Work Experience and Training Projects Division has been terminated the welfare relief for which those persons were eligible prior to such employment until such time as the defendants determine, following the procedures granted other welfare recipients, that those persons are presently ineligible for such relief.