DIVISION 819, AMALGAMATED TRANSIT UNION, et al., Plaintiffs,

v.

Brendan T. BYRNE, Individually and in his capacity as Governor of the State of New Jersey, and Alan Sagner, Individually and in his capacity as Commissioner of Transportation of the State of New Jersey, and as Chairman of the Commuter Operating Agency; and their agents, assigns, and successors in office, Defendants.

Civ. A. No. 76–698.

United States District Court,
D. New Jersey.

June 17, 1976.

Weitzman, Brady & Weitzman by Richard P. Weitzman, Irvington, N. J., Bredhoff, Cushman, Gottesman & Cohen by Bernard Cushman, Washington, D.C., for plaintiffs.

William F. Hyland, Atty. Gen. of N. J. by Larry Filler, Deputy Atty. Gen., Trenton, N. J., for defendants.

### OPINION

STERN, District Judge.

This is an action brought by several local unions affiliated with the Amalgamated Transit Union. The union plaintiffs represent workers who are employed by various bus transit companies subsidized by the State of New Jersey. The complaint seeks declaratory and injunctive relief under the Supremacy Clause of the United States Constitution in an effort to prohibit officials of the State of New Jersey from engaging in conduct which plaintiffs claim constitutes interference with an ongoing collective bargaining process. Plaintiffs have moved for a preliminary injunction. The defendants have cross-moved for dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment.

The gravamen of the asserted complaint is that "In the midst of these negotiations [over a new collective bargaining agree-

ment] the defendant Commissioner of Transportation, Alan Sagner, injected the State into those negotiations." (Complaint, ¶ 17) The interference complained of is that Commissioner Sagner announced that the State would not continue its policy of subsidizing financially troubled private transit companies if the plaintiff unions insisted on retaining an "uncapped cost of living" clause in their labor contracts with the companies. It is alleged that the defendants continued to adhere to and to publicize this announced State policy during the pendency of negotiations and during a strike of various companies.

According to the complaint, some of these companies have settled with the unions, while others continue on strike. The complaint avers that this conduct on the part of the defendants constitutes an impermissible attempt to dictate the position of the private employer bus companies in the collective bargaining dispute, and is thus in conflict with federal labor policy and barred under the Supremacy Clause. The complaint seeks prospective injunctive and declaratory relief to redress this asserted violation.

The issue presented by this case, in the view of this Court, is whether the complaint states a claim upon which relief may be granted, taking its factual allegations as true. The plaintiffs argue that the foundation of the national labor policy is free collective bargaining without government control, see *H. K. Porter Company v. NLRB,* 397 U.S. 99, 103–104, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970), and that the State's actions as alleged in the complaint violate that principle. In further support of their contention that the actions of the State officials are in derogation of the supreme federal interest in a free collective bargaining process, they point to the cases of *Teamsters Local 24 v. Oliver,* 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959); *Nash v. Florida Industrial Commission,* 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438 (1967), and *Hill v. Florida,* 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945).

This Court, however, agrees with the defendants that these cases are not precisely apposite. In each of the cases relied upon by plaintiffs, the Supreme Court was faced with an action on the part of the State which directly frustrated one or more explicit portions of the federal labor laws, or was seemingly directed at achieving such frustration. Where, as here, the activity complained of has a more indirect effect on the collective bargaining process the situation is somewhat different.

In the instant case the defendants are charged by the Constitution and laws of New Jersey with overseeing, in the public interest, the operations of their respective executive departments. The New Jersey Legislature has granted discretionary authority to the Commissioner of Transportation to make subsidy payments through the Commuter Operating Agency, C.O.A., pursuant to N.J.S.A. 27:1A–18 *et seq.* To the extent that these payments or subsidies establish the parameters of the collective bargaining negotiations by defining the total amount available to the negotiating parties, they are akin to the economic market forces that define the limits of any collective bargaining process. And, as the union concedes, there is no infirmity whatsoever in communicating general information as to the availability of the subsidy payments to the negotiating parties. Obviously, relevant legislative and administrative actions must be conveyed. Such information is a precondition of any bargaining at all. If the parties do not know and cannot know what is available to be placed on the table they cannot know what they have to bargain for or from.

The plaintiffs contend, however, that when the State officials go beyond communicating this generalized information as to the availability of the subsidies and discuss particular terms of the collective bargaining agreements, they trespass onto grounds which federal law reserves to the bargaining parties. While the issue is not entirely free from doubt, this Court cannot concur. The fact that the federal labor policy requires that the parties bargain

without outside interference does not mean that a State which subsidizes an essential commuter service is necessarily to be bound by the terms which the parties themselves may reach in determining the availability of the subsidy. In other words, it is not left to the discretion of the parties to determine how much money the State would pay, or whether the State will pay at all. On the contrary, the State is free to take any position on the availability of subsidies in the exercise of executive or legislative discretion. Such a position may indeed advert to the nature of the collective bargaining agreement, just as it may advert to such factors as routes, frequency of service, and any other issue considered to be significant to the public interest by the responsible officials. This Court cannot perceive any constitutional or statutory infirmity in communicating such a position to the parties in advance of the negotiations, rather than waiting until contracts unacceptable to the State have been concluded and then withdrawing subsidy assistance.

■ If the State may decide to make subsidy funds available on a discretionary basis, a position not challenged by plaintiffs, then the parties cannot complain when they are informed of the State's intentions and discretionary criteria in advance rather than having these things kept mysteries until the end. Indeed, one would expect that negotiations would be furthered, not impeded; advanced, not thwarted; indeed more enlightened by reason of knowing the State's intentions in advance of the contract rather than having to negotiate in ignorance and without any awareness of what the State intended to do. It may well be that in this instance the unions are dissatisfied with the conditions which the State officials choose to attach to the continued availability of subsidies. It is equally easy to imagine conditions which management would consider inimical to its interests. But the discretionary authority conferred by the Legislature upon the Commissioner of Transportation clearly contemplates his official discretion will be used in weighing the public interest when he decides to spend the State's money for trans-portation subsidies. That discretion is not transferred to the bargaining parties through any requirement imposed by federal labor law; the policy of permitting and encouraging free collective bargaining does not require that the Commissioner surrender his responsibility for the subsidy program to the vagaries of the collective bargaining process. The unemployment compensation cases of *ITT Lamp Division v. Minter,* 435 F.2d 989 (1st Cir. 1970), *cert. denied,* 402 U.S. 933, 91 S.Ct. 1526, 28 L.Ed.2d 868 (1971), and *Grinnell Corporation v. Hackett,* 475 F.2d 449 (1st Cir.), *cert. denied,* 414 U.S. 858, 94 S.Ct. 164, 38 L.Ed.2d 108 (1973), are instructive although not directly on point. Both cases involved the exercise of State decisions whether to pay various benefits to striking workers. The issue presented in those cases was the asserted intrusion of State economic power in strengthening the economic position of striking workers. These decisions highlight the different issues raised here.

■ We do not have here a question of State intervention to strengthen or weaken one or the other party to the negotiating process. We have, instead, a situation where a discretionary decision by the State sets the parameters within which both parties must operate and both parties must bargain. This Court cannot say that the employers are "strengthened" by the announced position of the State, nor can the Court say that the workers are "weakened" vis-a-vis the employers by reason of the State explaining how much money will be available and under what circumstances.

■ The conditions of continuing subsidies are for the State to decide in the exercise of executive discretion. The State could withdraw such assistance irrespective of what the contracts provide. To communicate the realities of the exercise of this discretion to the parties does not in the view of this Court constitute, therefore, an interference in the collective bargaining process. It violates no provision, express or implied, of the federal labor laws or the national labor policy.

Accordingly, in the view of this Court the complaint fails to state a claim upon which relief may be granted, and will be dismissed.