**FEDERAL ENERGY REGULATORY COMMISSION and John T. Rhett, Federal Inspector for the Alaska Natural Gas Transportation System, Plaintiffs,**

v.

**The PUBLIC SERVICE COMMISSION OF The State of NORTH DAKOTA, Richard A. Elkin, E. Bruce Hagen, Ben J. Wolf and Allen I. Olson, Defendants,**

**and**

**Foothills Pipe Lines (Yukon), Ltd., and Pan-Alberta Gas, Ltd., Intervenors,**

**South Dakota Public Utilities Commission, Intervenor.**

**NORTHERN BORDER PIPELINE COMPANY, Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION OF NORTH DAKOTA, Richard A. Elkin, Bruce Hagen, and Ben J. Wolf, Defendants,**

**and**

**Foothills Pipe Lines (Yukon), Ltd., and Pan-Alberta Gas, Ltd., Intervenors,**

**South Dakota Public Utilities Commission, Intervenor.**

**Nos. A1–80–139, A1–80–140.**

United States District Court, D. North Dakota, Southwestern Division.

April 2, 1981.

Orell D. Schmitz, Bismarck, N. D., George W. McHenry, Jr., Washington, D. C., for Foothills Pipe Lines and Pan-Alberta Gas, Ltd.

Lawrence Kamin, Washington, D. C., for South Dakota Public Service Commission.

Robert Wefald, Atty. Gen., Bismarck, N. D., for Public Service Commission of N. D.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

Jurisdiction in A1–80–139 is laid under 15 U.S.C. § 717s (1976), and § 719 *et seq.* (1976), and 42 U.S.C. § 7171(i) (Supp. I 1977). Jurisdiction in A1–80–140 is asserted under 28 U.S.C. §§ 1331, 1332, 1337 and 1343. The Plaintiffs in both actions seek declaratory and injunctive relief under Sec-' tions 2201 and 2202 of Title 28, United States Code. The cases are now before the Court on the Plaintiffs' motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Hearing on said motions was had on March 9, 1981, following which supplemental briefs were filed by the interested parties. At the suggestion of the Court and with the agreement of counsel, the issues raised by the motions filed in each of the cases are considered together.

The discovery in 1968 of large reserves of natural gas on the North Slope of Alaska was followed by efforts on the part of industry and government to devise a feasible transportation system to carry the gas to the lower forty-eight states. These efforts culminated in 1976 when Congress enacted Public Law 94–586, cited as the Alaska Natural Gas Transportation Act of 1976, and codified at 15 U.S.C. § 719 *et seq.* The purpose of that legislation, as set out in House Report No. 94–1658 (found in U.S. Code Congressional and Administrative News, 94th Congress, 2nd Session, 1976, at p. 6643)

"... is to provide a process for arriving at a sound decision with respect to the selection of a transportation system for the delivery of Alaska natural gas to

United States markets and, should any such system be approved, to expedite its construction and initial operation."

In attempting to fulfill the stated purpose, Congress devised a four-step process: 1) In step one, the Federal Power Commission (predecessor of Plaintiff Federal Energy Regulatory Commission) was directed to suspend existing procedures and, after review of the situation, to report on all alternatives to the President by May 1, 1977. The Commission was empowered to recommend approval of a particular system or to advise that no system should be approved. 2) Step two provided an opportunity in the decision making process for federal officers and agencies, State governors and other instrumentalities of state government, and any other interested person or agency to comment on the report of the FPC. All recommendations and/or suggestions were to be provided the President by July 1, 1977. Environmental impact statements concerning the alternative systems were prepared by the Council on Environmental Quality and furnished to the President to assist in his decision, which was required to be announced by September 1, 1977. 3) The third step in this process consisted of Congressional review of the President's decision, under an expedited procedure. 4) The fourth and final phase of the process, to be implemented only if the President's decision received approval by Congress, mandated expeditious construction and operation and limited judicial review.

The evidence submitted in connection with the pending motions for summary judgment conclusively shows that all phases of ANGTA were meticulously followed. Significantly, all comments or suggestions provided to the President by persons or other governmental instrumentalities of the State of North Dakota were in favor of the system ultimately adopted. And, though provided with the opportunity (see § 719h of Title 15, U.S.C.) to contest or seek judicial review of the FERC's issuance of a certificate of public convenience and necessity, the Defendants herein chose not to do so.

The route chosen by the President through the State of North Dakota generally crosses the southwestern portion of the state and lies south and west of the Missouri River. The certificate issued to the Northern Border Pipeline Company by the FERC in 1980 delineated that route.

In March of 1979, Northern Border Pipeline Company, while explicitly reserving its jurisdictional objections, filed with the North Dakota Public Service Commission a letter of intent consistent with Chapter 49–22 of the North Dakota Century Code, cited as the North Dakota Energy Conversion and Transmission Facility Siting Act. Ultimately, the North Dakota Public Service Commission approved a pipeline corridor different than that previously selected by the President and certificated by the FERC. This litigation resulted; and raises the simple issue: By passage of the Alaska Natural Gas Transportation Act of 1976, has Congress preempted the then existing North Dakota siting laws? In other words who, as between federal and state authorities, has the ultimate authority to designate the specific route of an admittedly interstate natural gas pipeline through the State of North Dakota?

Plaintiffs contend that Congress, by its enactment of the ANGTA, has preempted the field of regulation in this instance, but only in a very narrow fashion. That is, Congressional action taken pursuant to ANGTA, culminating in the issuance by the FERC of a certificate of public convenience and necessity in April of 1980 preempts the action taken by the Public Service Commission of North Dakota in September 1980, insofar as the action by the PSC purports to deny to Northern Border Pipeline Company the right to construct the pipeline through North Dakota along the route mandated by the federal certificate.

On the other hand, the Defendants deny that their action has been preempted by Congress; deny that the doctrine of preemption is applicable in this instance; and assert that their actions are compatible and do not conflict with the federal directives.

A state statute which either frustrates the purpose of federal legislation or impedes the operation of the federal agency charged with superintending a preempted field cannot stand. *Nash v. Florida Industrial Commission*, 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438 (1967). Even though a federal statute does not specifically exclude state legislation, it nevertheless overrides those state laws with which it conflicts. *Chicago-Midwest Meat Association v. City of Evanston*, 589 F.2d 278 (7 Cir. 1978), cert. den. 442 U.S. 946, 99 S.Ct. 2895, 61 L.Ed.2d 318. Federal preemption of state law or action under the Supremacy Clause of the United States Constitution may come about in two ways: First, preemption may occur because of a direct conflict between authorized federal and state action, and, Second, preemption may occur if a state statute or action stands as an obstacle to the accomplishment and execution of the federal statute or action. See: *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), and *Perez v. Campbell*, 402 U.S. 637, 650–51, 91 S.Ct. 1704, 1711–12, 29 L.Ed.2d 223 (1971). And, federal statutes which regulate a multi-state activity which cannot be regulated effectively or realistically by competing states preempts state statutes. *Cloverleaf v. Patterson*, 315 U.S. 148, 167, 62 S.Ct. 491, 501, 86 L.Ed. 754 (1942).

Though no specific reference is found in ANGTA which excludes state regulation (and thereby establishes, without a doubt, federal preemption), numerous provisions are found therein which require that the pipeline route be selected through federal action. Section 5(b)(1) of ANGTA (15 U.S.C. § 719c(b)(1)) expressly requires that any recommendation from the Commission to the President "shall ... include a description of the nature and route of the system ..." This mandate was met. Section 7(a)(4)(A) (15 U.S.C. § 719e(a)(4)(A)) requires that the President, in approving an Alaskan gas transportation system, "shall ... describe the nature and route of the system." This mandate was met. Section 5(c) (15 U.S.C. § 719c(c)) requires that Commission's recommendation to the President

to include, *inter alia*, a discussion of the environmental impact on the area to be traversed. In order to discuss this factor the Commission must have had a specific route in mind. Further, Section 5(e) (15 U.S.C. § 719c(e)) requires the submission of an environmental impact statement concerning the recommended system. Such statement must be predicated upon a specific route. As a whole, the provisions of ANGTA describe a pervasive scheme of federal regulation directed to every aspect of this unique pipeline, including its route across North Dakota.

Under the circumstances, I conclude that the challenged North Dakota statutes, insofar as they conflict with the federal scheme for the routing and construction of the pipeline to be built pursuant to ANGTA, 15 U.S.C. § 719 *et seq.*, stand as an obstacle to the accomplishment and execution of valid purposes and objectives of Congress. For that reason, and to that extent, they must yield to overriding federal law.

Now Therefore, the Court having considered the pending motions for summary judgment, together with all briefs, affidavits, exhibits and attachments, and having determined that there remains no genuine issue of material fact and that the Plaintiffs are entitled to judgment as a matter of law, it is

ORDERED that said motions for summary judgment be, and the same hereby are, in all things, *granted.*

Counsel for the movants in each of the above captioned case shall forthwith prepare, serve and submit an appropriate form of judgment in conformity herewith.