NATIONAL LABOR RELATIONS
BOARD, Plaintiff,

v.

Leslie BUTTS, Albert Dickerson, Jesse
Mongit, Defendants.

Civ. A. No. 82–2920.

United States District Court,
E.D. Louisiana.

Dec. 20, 1982.

John H. Curley, Fallon W. Bentz, New Orleans, La., Margery E. Lieber, Washington, D.C., for plaintiff.

George T. Mustakas, II, Metairie, La., for defendants.

CASSIBRY, District Judge:

On July 12, 1982 the National Labor Relations Board (hereafter "the NLRB") filed its complaint for preliminary and permanent injunction and for declaratory judgment, and moved for preliminary injunction, alleging that a state district court in Louisiana had acted in a labor dispute which was within the exclusive jurisdiction of the NLRB.

On July 15, 1982 a hearing on the motion for preliminary injunction was set for September 8, 1982. The defendants filed no responsive pleadings either to the complaint or to the motion for preliminary injunction until September 7, 1982 at 12:42 P.M. when they filed an answer which was in effect a general denial of the factual allegations. The NLRB did not receive this pleading prior to the hearing on September 8.

The motion for preliminary injunction was granted at the close of the hearing. This ruling was set aside on September 23, 1982 in order to permit the NLRB to produce proof of facts made necessary by the

defendants' general denial and refusal after the hearing to enter into any stipulation of facts. The matter was set for further hearing on November 10, 1982.

The NLRB thereafter moved for summary judgment, which was opposed, and this motion was denied at the hearing on November 10. After additional proof of the NLRB's allegations of fact was received, the order granting the motion for preliminary injunction was reinstated.

After due consideration of the evidence and the law, the Court concludes that no just reason appears for delaying the granting of relief on the complaint for permanent injunction and declaratory judgment. The decision to grant injunctive and declaratory relief is based upon the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff, National Labor Relations Board is an agency of the United States created by and charged with exclusive administration of the National Labor Relations Act, as amended (29 U.S.C. Sec. 151, *et seq.*).

2. Defendants are employees of Industrial Cleaning Services, Inc.

3. Industrial Cleaning Services, Inc. (hereafter "ICS") is a Louisiana corporation which performs building maintenance at the Slidell, Louisiana facility of the National Aeronautics and Space Administration (hereafter "NASA").

4. Systems Development Corporation (hereafter "SDC") is engaged in the business of providing computer services to NASA at NASA's Slidell, Louisiana facility.

5. On June 23, 1977, the NLRB certified the New Orleans Metal Trades Council, AFL–CIO (hereafter "the Union") as the exclusive collective-bargaining representatives of a unit of maintenance employees employed by SDC at NASA's Slidell, Louisiana facility. The Union is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act.

6. Until November 1981, SDC employed 14 employees and one supervisor to perform the maintenance work at NASA's Slidell, Louisiana facility. In November 1981, SDC subcontracted the maintenance work at NASA's Slidell facility to ICS. ICS hired six (6) of the SDC employees but did not employ eight (8) individuals who had been employed by SDC as maintenance employees and were in the certified bargaining unit. In November 1981, ICS also hired seven (7) individuals not previously employed by SDC at NASA including Leslie Butts, Albert Dickerson and Jesse Mongit.

7. On December 3, 1981, the Union filed an unfair labor practice charge against ICS with Region 15 (New Orleans) of the NLRB (Board Case No. 15–CA–8401). On January 15, 1982, the Regional Director, on behalf of the NLRB's General Counsel, issued a complaint alleging that, following an award of a subcontract by SDC, ICS violated Section 8(a)(3) and (1) of the NLRA by refusing to hire eight (8) of SDC's employees because of their membership in or support of the Union, in order to discourage further union activity, and/or in order to avoid any obligation to bargain with the Union. The complaint further alleged that ICS' refusal to recognize and bargain with the Union violated Section 8(a)(5) and (1) of the NLRA because the Union would continue to enjoy majority status were it not for ICS' discriminatory hiring and because ICS was a legal successor to SDC.

8. On February 5, 1982, the Union and ICS executed a Memorandum of Agreement. The agreement required ICS to recognize and enter into a collective bargaining agreement with the Union and to offer immediate reinstatement with backpay to seven (7) named former SDC employees who had been denied employment by ICS in November 1981. On March 4, 1982, ICS and the union executed a collective bargaining agreement; this agreement did not contain a union security provision.

9. As a result of the February 1982, Memorandum of Agreement, the Regional Director, on February 5, 1982, approved the Union's request to withdraw its unfair labor practice charge and dismissed the unfair labor practice complaint.

10. In early February 1982, ICS notified employees Butts, Dickerson, and Mongit that they would be terminated on February 23, 1982.

11. On February 22, 1982, Butts, Dickerson and Mongit filed a petition in the Civil District Court for the Parish of Orleans, State of Louisiana, (*Leslie Butts, et al. v. Industrial Cleaning Services, et al.*, No. 82–2583),[1] to enjoin ICS from terminating them, as announced on February 23. The petition alleged that they were to be discharged because the Union's agreement to withdraw its Board charge was contingent upon ICS' replacing Butts, Dickerson, and Mongit with Union members and that such action violated Louisiana's "Right to Work" laws (R.S. 23:981, *et seq.*).

12. Following execution of the Memorandum of Agreement on February 5, 1982, ICS offered reinstatement to the seven employees named in the agreement; six of these individuals accepted reinstatement. The individuals were reinstated on or about February 23, 1982.

13. On or about February 23, 1982, ICS terminated Butts, Dickerson and Mongit.

14. On March 5, 1982, the Civil District Court for the Parish of Orleans, State of Louisiana, issued a preliminary injunction prohibiting ICS from terminating defendants and ordering their reinstatement as of February 23, 1982. The Court further ordered that, if necessary, ICS should terminate three (3) of the former SDC employees rehired at the time of defendants' discharges. The court based its order on a conclusion that defendants were discharged solely because they were not union members, in violation of Louisiana's right to work laws.

15. On March 24, 1982, following a rehearing, the state court reaffirmed the original preliminary injunction. The state court, noting that states have authority to prohibit the enforcement of union security clauses, held that, although the agreement between the Union and ICS "[did] not per se contain a union security agreement or clause," it "amounts to a union security agreement which is inconsistent with the public policy behind the right-to-work act." ICS thereafter filed an appeal with the Fourth Circuit Court of Appeals, State of Louisiana.

16. On or about March 26, 1982, ICS rehired Butts, Dickerson and Mongit pursuant to the state court injunction.

17. On or about March 26, 1982, three (3) of the SDC employees rehired pursuant to the settlement agreement were discharged.

18. On April 2, 1982, the Union filed with Region 15 of the NLRB a new unfair labor practice charge (Board Case No. 15–CA–8535–2), alleging the same violations set forth in its original—December 1981—charge. That charge is pending in Region 15.

19. Since March 1982, ICS has recalled one of the three employees discharged in March 1982. Two have not been offered reinstatement.

20. ICS in the course and conduct of its operations in 1982 has, and will, provide services valued in excess of $300,000 to SDC.

## CONCLUSIONS OF LAW

1. The National Labor Relations Act is a comprehensive federal code regulating all labor relations in interstate commerce, and, as such, it is the "supreme law of the land." *Garner v. Teamsters Union Local 776*, 346 U.S. 485, 500–501, 74 S.Ct. 161, 171, 98 L.Ed. 228 (1953); *Nash v. Florida Industrial Commission*, 389 U.S. 235, 238–240, 88 S.Ct. 362, 365–66, 19 L.Ed.2d 438 (1967). Accordingly, the Act supersedes and preempts any state or local action that conflicts directly with its national scheme. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 242–245, 79 S.Ct. 773, 778–79, 3 L.Ed.2d 775 (1959); *Local 20, Teamsters v. Morton*, 377 U.S. 252, 260–261, 84 S.Ct. 1253, 1258–59, 12 L.Ed.2d 280 (1964). The NLRA subordinates not only state labor laws, but any state law or regulation that conflicts with the Act's purposes

1. Two of the original five (5) plaintiffs subsequently withdrew from the case.

under the commerce power. *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 292, 91 S.Ct. 1909, 1920–21, 29 L.Ed.2d 473 (1971); *Nash v. Florida Industrial Comm.,* 389 U.S. at 239–240, 88 S.Ct. at 366.

2. In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), the Supreme Court enunciated the general principle that:

> When it is clear or may fairly be assumed that activities which a State purports to regulate are protected by Section 7 of the National Labor Relations Act, or constitute an unfair labor practice under Section 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

"Consequently, as a general rule, neither state nor federal courts have jurisdiction over suits directly involving 'activity [which] is arguably subject to Section 7 or Section 8 of the Act.'" *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1968), quoting *San Diego Building Trades Council v. Garmon,* 359 U.S. at 245, 79 S.Ct. at 780.

3. The conduct which is the subject of the state court complaint—whether ICS discharged defendants solely because they were not members of the Union, and whether the Union pressured ICS into taking that action—would constitute an unfair labor practice under Section 8 of the National Labor Relations Act which by Section 8(a)(3) (29 U.S.C. 158(a)(3) prohibits an employer from discriminating "in regard to hire or tenure of employment . . . to encourage or discourage membership in any labor organization. . . ." and which by Section 8(b)(2) (29 U.S.C. 158(b)(2)) prohibits a union from "caus[ing] or attempt[ing] to cause an employer to discriminate against an employee in violation of subsection [8](a)(3)." . . ."

■ 4. The state court action, *Leslie Butts, et al. v. Industrial Cleaning Services, et al.* (Civil District Court for the Parish of Orleans, State of Louisiana, No. 82–2583), is an attempt to have the State regulate conduct which is arguably prohibited by Section 8 of the NLRA and is therefore preempted by the NLRA and committed by Congress to the exclusive jurisdiction of the NLRB. The state court action is thereby invalid under the Supremacy Clause of the United States Constitution (Article VI, Clause 2) and beyond the jurisdiction of the state court.

5. The injunction orders issued against ICS on March 5 and 24, 1972, are an attempt by the State to regulate conduct preempted by the NLRA and committed by Congress to the exclusive jurisdiction of the NLRB, and the state orders are therefore invalid under the Supremacy Clause of the United States Constitution (Article VI, Clause 2).

6. Section 14(b) of the NLRA does not confer jurisdiction on the state court to entertain defendants' suit. Section 14(b) permits states to enact right-to-work laws prohibiting union security agreements. Section 14(b) is an exception to the NLRB's exclusive jurisdiction to regulate employees' and unions' conduct vis a vis employee rights protected by the NLRA. It is, however, a narrow exception. If the conduct the state is attempting to govern in a particular circumstance does not fall within the limited ambit of Section 14(b) pertaining to union security agreements, the state action is preempted by the NLRA under the Supremacy Clause of the Constitution.

■ 7. The conduct which is the subject of the defendants' state court suit does not fall within the narrow exception allowed by Section 14(b). The state court judge specifically found that the agreement between ICS and the Union did not contain a union security provision. Alleged discrimination on the basis of union related conduct other than a union security provision is within the exclusive jurisdiction of the NLRB. Furthermore, a contention that the Company's hiring was controlled by a union hiring hall does not confer state jurisdiction under Section 14(b), for it is well established that the

right-to-work laws permitted by Section 14(b) may not prohibit the use of union hiring halls. See *NLRB v. Houston Chapter, Associate Gen'l Contractors of America, Inc.,* 349 F.2d 449, 453 (5th Cir.1965); *Int'l Union of the United States Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States v. NLRB,* 675 F.2d 1257, 1262 (D.C. Cir.1982) and cases cited.

8. Application of state law to defendants' unlawful discharge claim also will threaten "interference with the clearly indicated policy of industrial relations" (*San Diego Bldg. Trades Council v. Garmon,* 359 U.S. at 243, 79 S.Ct. at 778), since it will tend to discourage the peaceful settlement of labor disputes. Employers will be much less willing to settle pending unfair labor practice charges by agreeing to the reinstatement of employees if such action will expose them to financial liability or an injunction suit in state court. Furthermore, the exercise of state jurisdiction over defendants' claim would interfere with the NLRB's administration of the NLRA by forcing the NLRB to devote more of its scant administrative resources to litigating, rather than settling, unfair labor practice charges. Accordingly, state action on defendants' claims is preempted because of the potential that such action will interfere with national labor policy. See *Nash v. Florida Industrial Commission,* 389 U.S. 235, 239, 88 S.Ct. 362, 366, 19 L.Ed.2d 438 (1967).

9. The defendants' suit and the state court's assertion of jurisdiction and injunction order (1) are an attempt to regulate conduct arguably constituting unfair labor practices which were intended to be regulated exclusively under Sections 8 and 10 of the NLRA and (2) interfere with the national labor policy of promoting voluntary settlement of labor disputes. Enjoining the defendants from instituting and/or prosecuting their current state court action or any state court action for the purpose of regulating conduct governed by the NLRA is therefore appropriate and necessary to protect federal interests. *NLRB v. Nash-*

*Finch Co.,* 404 U.S. 138, 144–145, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1977). See *Virginian Railway Co. v. System No. 40,* 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937); *Hecht Co. v. Bowles,* 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944) (when a government agency seeks injunctive relief, "the standards of the public interest, not the requirement of private litigation, measure the propriety and need for injunctive relief"); *NLRB v. State of New York,* 436 F.Supp. 335, 339 (E.D.N.Y.1977), aff'd 591 F.2d 1331, 2d Cir. (unreported), cert. denied, 440 U.S. 950, 99 S.Ct. 1431, 59 L.Ed. 639; *NLRB v. G.C. Murphy,* 87 LRRM 2480 (N.D.W.Va.1974); *Tyree v. Edwards,* 287 F.Supp. 589, 593 (D.C.Alaska 1968), aff'd 393 U.S. 405, 89 S.Ct. 684, 21 L.Ed.2d 633 (1969).

An order shall be entered declaring that defendants' complaint in *Leslie Butts, et al. v. Industrial Cleaning Services, et al.* (Civil District Court for the Parish of Orleans, State of Louisiana, No. 82–2583), is invalid because it seeks regulation of conduct which is within the exclusive jurisdiction of the NLRB and preempted by the NLRA; and further the order shall permanently enjoin the defendants, their agents and attorneys from:

(a) in any manner instituting and/or prosecuting any state court action, including *Leslie Butts, et al. v. Industrial Cleaning Services, et al.* (Civil District Court for the Parish of Orleans, State of Louisiana, No. 82–2583), for the purpose of enjoining, regulating, or restraining conduct which is governed exclusively by the NLRA;

(b) seeking to enforce the preliminary injunctions issued on March 5, 1982, and March 24, 1982, in *Leslie Butts, et al. v. Industrial Cleaning Services, et al.* (Civil District Court for the Parish of Orleans, State of Louisiana, No. 82–2583); and

(c) in any like or related manner attempting to regulate conduct which is within the exclusive jurisdiction of the National Labor Relations Board and governed exclusively by the National Labors Relations Act.