W. SHARP, J.
Ching appeals from an order of the Florida Unemployment Appeals Commission (the Commission). It affirmed an appeals referee’s determination that Ching is *368 liable for the repayment of $5,000 of unemployment compensation benefits he received from the state because he also subsequently received a back pay award and payment from his employer for the same time period, pursuant to a complaint and proceeding before the National Labor Relations Board (NLRB). We affirm.
In 1998, after Ching was discharged by Meisner Electric, Inc. (Meisner), his union filed an unfair labor practice charge with the NLRB. The proceeding concluded with Meisner being directed to offer Ching reemployment and make him whole for any loss of earnings suffered as a result of the discharge. Meisner Electric, Inc., 316 NLRB 597, 598 (1995), affirmed, 83 F.2d 436 (11th Cir.1996).
On March 19, 1997, Ching attempted to become re-employed by Meisner, without success. As a result, his union again filed another charge against Meisner with the NLRB, on April 23, 1997. In the interim, Ching applied for and received unemployment benefits from the state.
An NLRB compliance hearing was scheduled in January of 1998, to resolve the amount Meisner owed Ching for the 1993 discharge. The NLRB agreed to settle the charge as a part of a consent order which included a finding that Meis-ner had violated the NLRA. A formal settlement agreement was entered into, in which Meisner agreed to pay compensation due Ching “according to standard Board formula, consisting of the total net back pay, net fringe benefits, and interest accrued thereon.” From those amounts, deductions for FICA, social security, and medicaid taxes were to be made.
The parties thereafter agreed to settle the 1997 case. The attorney for Ching wrote a letter dated January 8, 1998, confirming the settlement, which provided in part:
In consideration for the terms of settlement with the National Labor Relations Board, and in particular, the payment to Stephen Ching, IBEW Local 756 and Mr. Ching agree to the following:
[[Image here]]
2. Mr. Ching agrees that he will not apply for employment with Meisner Electric for a period of 360 days subsequent to the above date, provided that he may apply at any time for any project of Meisner Electric’s located in Volusia or Flagler Counties or at the Kennedy Space Center and adjacent federal enclaves in Florida.
Also on January 8, 1998, a draft of the agreement was prepared by the NLRB representative. It provided Meisner must make Ching whole for the loss of pay he may have suffered by reason of discrimination, by payment of $14,000.
The draft was never executed, but on April 1, 1998, the parties executed a formal Settlement Stipulation resolving the 1997 unfair labor practice claim. Paragraph 2(c) of that decision provides:
(c) Make whole Stephen Ching, with interest, for the loss of pay he may have suffered by reason of the discrimination against him, by payment to him of back pay in the amount of $13,733.00 plus interest in the amount of $267.00. (emphasis supplied)
In November or December 1998, Ching received a net amount of $9,106 after taxes were deducted.
Thereafter, a claims adjudicator for the State of Florida redetermined Ching’s eligibility for unemployment benefits. He determined Ching was ineligible to receive unemployment benefits from March 19, 1997 through December 31, 1997, because he had received a back pay award for the same time period and that income, when *369 prorated was in excess of the weekly benefit amount.[1] This decision was ultimately approved by the Commission, which ruled that the back pay Ching received form his employer, pursuant to the 1997 NLRB proceeding was “earned income” as defined in section 443.036(16), Florida Statutes (Supp.1998), which provides:
(16) EARNED INCOME. — The term “earned income” means gross remuneration derived from work, professional service, or self-employment but does not include income derived from invested capital or ownership of property. The term includes commissions, bonuses, back pay atvards, and the cash value of all remuneration paid in any medium other than cash. (Emphasis supplied)
We disagree that the federal law preempts the state in this case. In NLRB v. Gullett Gin Co., 340 U.S. 361, 363-364, 71 S.Ct. 337, 95 L.Ed. 337 (1951), the Court ruled that the NLRB had the power to award back pay and refuse to deduct state unemployment compensation payments in entering its order. But in a footnote, the Court said:
We note that some states permit recoupment of benefits paid during a period for which the National Labor Relations Board subsequently awards back pay. [citations omitted] Recoupment in such situations is a matter between the State and the employees. (Emphasis supplied)
Sixteen years later in Nash v. Florida Industrial Commission, 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438 (1967), the court held that a state was free to recoup unemployment compensation payments made during any period covered by a back-pay award of the NLRB.[2] And nineteen years later in Baker v. General Motors Corp., 478 U.S. 621, 106 S.Ct. 3129, 92 L.Ed.2d 504 (1986), the court noted this concept again, citing New York Telephone Co. v. New York Dept. of Labor, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979). The Baker court stated, “it is equally clear, however, that federal law does not prohibit the States from deciding whether or not to compensate the employees who thereby cause their own unemployment,” referring to Michigan law which disqualified employees who helped finance a strike from receiving unemployment benefits. Baker at 3136-3138.
In a more recent case, Moreno Roofing Co., Inc. v. Nagle, 99 F.3d 340 (9th Cir.1996), the Ninth Circuit noted that the Garmon[3] pre-preemption doctrine, while preventing the states from regulating conduct subject to the jurisdiction of the NLRB, did not apply when the conduct was only of a peripheral concern. And it held that a California law, which required an employer to repay state unemployment, benefits when a worker received a back pay award from the NLRB was sufficiently independent of the Garmon pre-pre-emption doctrine. The employer’s equity claim that it would not have agreed to settle the unfair labor practice claim had it known of this liability, was rejected.
Second, Ching argues that section 443.036(16) does not include “back pay” as earned income. Rather, he says an individual is deemed totally unemployed under *370 that statute “[in] any week during which he or she performs no services and with respect to which no earned income is payable to him or her.” (emphasis supplied). § 443.036(39), Fla. Stat.
Although this is a possible interpretation of the law, we think the language of the statute is clear and unambiguous and must be given effect. Modder v. American Nat'l Life Ins. Co., 688 So.2d 330, 333 (Fla.1997); Aetna Cas. and Sur. Co. v. Huntington Nat’l Bank, 609 So.2d 1315, 1317 (Fla.1992). Section 443.036(16) expressly provides that “earned income” includes “back-pay awards” and further, section 443.036(40) defines “wages” as including “back pay awards.” Neither section contains an exception for NLRB awards, nor does the statute specifically deal with NLRB awards in any section. However, the disqualifying section, 443.101(3), although not mentioning back pay, disqualifies a person if he or she is “receiving or has received remuneration in the form of wages in lieu of notice.” The analogy between wages in lieu of notice as a disqualifying event and back pay is obvious. Neither is earned in the sense that the claimant performs actual work or services.
Ching argues the Commission’s order should be set aside because it is not supported by substantial, competent record evidence. On remand to the referee, he was to determine: 1) whether Ching actually received unemployment benefits; 2) if so, the amount of the benefits received; and 3) the time period covered by the back pay award. He concluded the $14,000 back pay award was for the time period March 17, 1997 through November 31, 1997. That equates to $341.15 per week. As a result, Ching was not entitled to unemployment compensation for the weeks of July 5, 1997 through November 15, 1997 at the rate of $250 per week, or a total of $5,000 because Ching received earned income (back pay) during each of those weeks that exceeded the amount of the state benefits.
Ching argues that the finding that $14,000 was paid for the period of March 17, 1997 through December 31, 1997 was not supported by competent, substantial evidence. Rather, he argues the compensation was for a one-year period beginning on January 8, 1998, because it was during this period Ching agreed to waive his reemployment rights. However, there is little in the record to support this view.
Williams, president of Ching’s union who represented Ching, testified that the parties did not settle the 1997 re-employment dispute claim according to the standard Board formula, which would have required the parties to define the period of time for which Ching was entitled to a back pay award. The parties did not discuss the rate of pay or the period of time for which Ching was entitled to a back-pay award. Rather they negotiated the $14,000 figure in exchange for Ching agreeing to waive his re-employment rights. Thus, the $14,000 was for the year Ching agreed not to reapply for reinstatement with Meisner; i.e., 1998. Ching thus concludes the $14,000 was not back pay at all, but was compensation for not pursuing his re-employment rights, commencing in January 1998.
Unfortunately for Ching, the written agreement does not support such a view or contention. As quoted above, the unexe-cuted draft of the parties’ agreement speaks of loss of pay, not compensation for future non-re-employment by Ching. And the Settlement Stipulation of the 1997 NLRB case, also quoted above, speaks expressly of paying Ching “back pay” in the amount of $13,733.00, etc. Parties are bound by the clear words of their agreements and a subsequent interpretation in *371 conflict with the clear meaning cannot be given effect.[4]
AFFIRMED.
GRIFFIN and SAWAYA, JJ., concur.

. § 443.036(16), Fla. Stat. (Supp.1998); § 443.091, Fla. Stat. (1997).

. The statute preempted was Florida’s scheme to deny unemployment benefits to persons who filed a complaint with the NLRB. The Supreme Court held that this was a financial burden to the claimant which impeded resort to the NLRA, and thwarted congressional reliance on individual action.

.San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

. Beans v. Chohonis, 740 So.2d 65 (Fla. 3d DCA 1999).