In re CONTINENTAL AIRLINES, INC., Debtor.

In re TEXAS INTERNATIONAL AIRLINES, INC., Debtor.

Bankruptcy Nos. 83–04020–H1–5, 83–4021–H3–5 and 83–04019–H2–5.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Sept. 26, 1985.

See also, 57 B.R. 839, 57 B.R. 845, and 57 B.R. 854.

John J. Gallagher, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for plaintiff.

Claude D. Montgomery, Booth, Marcus & Pierce, New York City, for defendant, Union Committee.

Bruce Simon, Babette Ceccotti, Cohen, Weiss & Simon, New York City, Helen Brattin, Schwartz, Waterman, Foclam & Van Os, Houston, Tex., for Air Line Pilots Ass'n, Intern.

John O'B. Clarke, Jr., William J. Birney, Highsaw & Mahoney, Washington, D.C., Marc A. Zito, Jones & Granger, Houston, Tex., for Intern. Ass'n of Machinists and Aerospace Workers.

Clifford H. Brown, Ervin, Cohen & Jessup, Beverly Hills, Cal., for Non-Union Labor and Pension Creditors Committee.

Jay D. Roth, Larry C. Drapkin, Taylor, Roth & Bush, Los Angeles, Cal., for Union of Flight Attendants.

ORDER GRANTING DEBTORS' MOTION TO ESTIMATE ALL CONTINGENT UNLIQUIDATED EMPLOYEE CLAIMS FOR PURPOSES OF CHAPTER 11 PLAN

T. GLOVER ROBERTS, Bankruptcy Judge.

CONFIRMATION PURSUANT TO SECTION 502(c) OF THE BANKRUPTCY CODE

This matter came on before this Court on the Debtors' Motion to Estimate all contingent or unliquidated employee claims for purposes of the Chapter 11 Plan Confirmation pursuant to § 502(c) of the Bankruptcy Code. Pleadings in response or in opposition have been filed by the Official Union Labor and Pension Creditors' Committee ("Union Committee"), the Non-Union Labor and Pension Creditors' Committee ("Non-Union Committee"), the Air Line Pilots Association ("ALPA"), and the International Association of Machinists and Aerospace Workers ("IAM"). The Court has received the pleadings and has heard the argument, responses and suggestions of counsel representing the above parties and is of the opinion that the Debtors' Motion is well taken and should be granted.

*Background*

The Debtors' filed their petition for Chapter 11 Relief on September 23, 1983. In early 1985, the Court issued its order setting a bar date for all claims against this estate to be filed and directed that notice be provided as required by statute to all claimants. The bar date established in that order was April 30, 1985.

The Court also by separate Order has previously instructed the Debtors to institute negotiations with the various creditor constituencies as to the proposed treatment of creditor claims in a plan of reorganization. The Debtors have recently stated to the Court that an agreement in principle as to a proposed plan for satisfaction of creditor claims has been reached with a substantial number of the creditor constituencies, as a result of the negotiations entered into during the year.

The Court, by its Order, set September 5, 1985 as the date for the termination of the Debtors' exclusive period, under § 1121 of the Bankruptcy Code, within which to propose a plan of reorganization. On September 5, 1985, the Debtors' filed their Disclosure Statement and their proposed Plan of Reorganization. Hearing dates have not yet been set for the latter two matters.

The primary creditor constituency as to which agreement in principle has *not* been reached is the constituency consisting of labor claimants. Individual Union and Non-Union employee claimants have filed over 13,000 employee claims for wages and labor-related damages alleged to arise out of this Chapter 11 proceeding.

A preliminary review of the individual claims indicates that they have been filed in amounts in excess of $354 million. In addition to these individual claims, ALPA, UFA, and the IAM have filed separate claims on behalf of the employees they represent totalling approximately $3.5 billion. The claims filed by the individuals and the Unions include claims for prepetition wages, for damages alleged to arise out of Debtors' rejection of their collective bargaining agreements, for damages alleged to be owed due to wrongful discharge, for damages alleged to arise from labor protective provisions imposed by the Civil Aeronautics Board, and for various other forms of damages alleged to arise out of obligations Debtors supposedly owed to their employees. At this time, these claims are unliquidated and contingent. In order to be able to finalize the provisions of a plan of reorganization and to effectuate plan confirmation, it is necessary that the allowed amount of the employee claims be established and reduced to a dollar amount.

*Ruling*

The process of determining the allowance of claims is of basic importance to the

administration of a bankruptcy estate, *In Re Towner Petroleum Co.*, 48 B.R. 182 (Bankruptcy, W.D.Okla., 1985), citing *Garnder v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947) and is a core proceeding, as defined in *The Bankruptcy Amendments and Federal Judgeship Act of 1984*, P.L. 98–353, 28 U.S.C. § 157(a) and (b)(2)(A) and (B). Specifically, the language states:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate:

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

In going through this process however, several Courts have held that § 502(c) of the Bankruptcy Code creates an affirmative, mandatory duty on a Bankruptcy Court to estimate an unliquidated or contingent claim if fixing or liquidating the claim would "unduly delay" the reorganization proceeding. *Matter of Brints Cotton Marketing, Inc.*, 737 F.2d 1338, 1340–41 (5th Cir., 1984), *In Re Towner Petroleum Co.*, Ibid, *In Re Nova Real Estate Investment Trust*, 23 B.R. 62, 65 (Bankr., E.D.Va., 1982).

The statutory mandate for estimation of the claims allowance matters is found in § 502(c) of the Bankruptcy Code, which provides as follows:

There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case, or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

■ The question here simply is whether or not this Court deems claims liquidation or estimation reasonably feasible. In light of the Debtors' statement to this Court relative to the status of resolution of claims of groups of creditors other than these employee claims, and in light of the announcement by the Debtors' and representatives of the above-described employee creditor constituencies that litigation is intended on these 13,000 plus claims, whose total exceeds $3.5 billion, this Court finds it reasonable to conclude that the Section 502(c) estimation process for this category of claims is the most appropriate, efficient and equitable method of concluding this Chapter 11 proceeding in an orderly manner, and the most effective method to accomplish the statutory purpose in bankruptcy of advancing a ratable distribution of assets among the creditors.

In reaching this conclusion, this Court believes that the liquidation process in the employee claims arena, would involve the unnecessary expenditure of enormous amounts of time, effort and money, by way of attorneys' fees inherently incurred in such litigation. To illustrate the liquidation via litigation process, the docket in this case reflects that not only do the claims exceed the number and dollar amounts described above, but an analysis of the claims, cited by example in the background discussion above, indicates that recovery is sought by this claimant group on some fifteen—twenty theories of law. In

the opinion of the Court, the liquidation by litigation process would hamper the efficient administration of the estate and quite probably delay the re-entry of the debtor into the normal business world and unnecessarily delay distribution of allowed claims to other creditor groups. Clearly, the broad equitable principle applies here that "creditors should not be disadvantaged vis-a-vis one another by legal delays attributable solely to the time consuming procedures inherent in the administration of the bankruptcy laws." *In the Matter of Brints Cotton Marketing, Inc.,* Ibid. at 1342, citing *Nicholas v. U.S.,* 384 U.S. 678, 86 S.Ct. 1674, 1679, 16 L.Ed. 853 (1966).

In applying the estimation process, this Court is mindful that it "is bound by the legal rules which govern the ultimate value of the claims", *In the Matter of Brints Cotton Marketing, Inc.,* Id. at 1341, *Bittner v. Borne Chemical Co., Inc.,* 1691 F.2d 134, at 135 (3rd Cir., 1982). However, "in estimating a claim, the bankruptcy court should use whatever method is best suited to the circumstances." *Id.*

In order to perform its duties under § 502, however, the Court has the power to inquire into the validity of any alleged debt upon which a claim against the estate is based, the exercise of this power being essential to the performance of the duties imposed upon it. *In Re Towner Petroleum Co.,* Id., citing *Lesser v. Gray,* 236 U.S. 70, 74, 35 S.Ct. 227, 228, 59 L.Ed. 471 (1915) and *In Re Unit Parts Co.,* 9 B.R. 386 (W.D.Okla., 1981).

Therefore, in exercising its claims estimation authority, this Court will make all determinations of all issues regarding the claims, including, but not limited to validity of the claims, priority of distribution issues and, of course, allowability pursuant to § 502 of the Bankruptcy Code.

The estimation process here appears to be laborious in and of itself. Each claims issue appears to have different legal theories and obviously, different parties, and no fixed rule can be applied at this point on the estimation methodology because of this diversity. Since the law of this Circuit allows a bankruptcy court to "use whatever method is best suited to the circumstances", *Matter of Brints Cotton Marketing, Inc.,* Id at 1341, this Court will apply the labor claims estimation process on a case by-case basis. For instance, it may be appropriate to estimate one group of claims at zero, due to the law applicable to that issue, or it may be necessary to conduct an evidentiary hearing to actually reach a conclusion on the amount to be estimated for allowance purposes here. As stated, within the framework of the employee claims groups, the Court shall apply the estimation process on a case-by-case basis. Briefing and hearing schedules are now in place by separate order, a copy being attached hereto and made a part hereof.