In re CONTINENTAL AIRLINES COR-
PORATION, Continental Air Lines,
Inc., Texas International Airlines, Inc.,
Txia Holdings Corporation, Debtors.

Bankruptcy Nos. 83–04019–H2–5,
83–04020–H1–5, 83–04021–H3–5
and 83–04022–H3–5.

United States Bankruptcy Court,
S.D. Texas.

June 26, 1986.

See also, Bkrtcy., 64 B.R. 862.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW WITH RESPECT
TO CLAIMS FOR MENTAL ANGUISH

T. GLOVER ROBERTS, Bankruptcy
Judge.

FINDINGS OF UNCONTESTED FACT

1. On September 24, 1983, Continental
Airlines, Inc. and Texas International Air-
lines, Inc. filed petitions for reorganization
under Chapter 11 U.S.C. § 1101 *et seq.*
Upon filing the bankruptcy petition, Conti-
nental temporarily suspended all domestic

service and on September 27, 1983, Continental began rebuilding the service by reinstating a limited portion of its domestic service, initially requiring fewer employees than immediately prior to bankruptcy. The Debtors implemented new employment policies for each employee group which included changes in both wages and benefits. The active employees worked under "Emergency Work Rules" and were generally paid lower wages and benefits than they had received before the filing of the petition.

2. Continental filed a motion to reject its collective bargaining agreements on September 27, 1983. Following an extended hearing this Court approved Continental's motion to reject its collective bargaining agreements with the Air Line Pilots Association ("ALPA") (Order of June 19, 1984) and the Union of Flight Attendants ("UFA") (Order of December 5, 1984). Each contract rejection is retroactive to September 24, 1983.

3. On June 26, 1984 this Court ruled that the International Association of Machinists and Aerospace Workers ("IAM") contracts would be rejected to the extent they were in effect on September 24, 1983. Through Findings Of Fact issued on November 30, 1984 and amended on August 9, 1985, the Court clarified that in fact, with a few exceptions, all provisions of the IAM contracts had expired on August 13, 1983 and that the few provisions that remained (which are not relevant to the claims at issue in this motion) would not be rejected.

4. On February 4, 1985 the Bankruptcy Court entered two Orders authorizing debtors to enter into negotiated agreements with the Transport Workers Union of America ("TWU") establishing wage rates and work rules for ground training instructors and flight superintendents. The Orders provided that upon execution of the new agreements, the agreements in effect at the time of the bankruptcy "shall be deemed abrogated as of September 23, 1983 and superseded by" the new agreements.

5. Sixteen unionized employees and 79 non-unionized employees have filed proofs of claim which include, *inter alia,* claims in the approximate amount of $3.4 million for mental anguish allegedly suffered as a result of the Debtors' bankruptcy.

6. Debtors have requested the Court to disallow all mental anguish claims by or on behalf of Continental employees on the grounds that (1) claims by unionized employees are preempted by the Railway Labor Act ("RLA") which does not recognize a claim for mental anguish; and (2) employee claimants state no cause of action for intentional infliction of emotional distress.

7. This Court has previously found that:

... [T]here was no way for Continental Airlines to repay its obligations nor even to continue its operations for very long in the future, as things then existed. Had the airline not filed its Chapter 11 proceeding when it did, it would not have been flying for very much longer, its 6,000 remaining employees would now be out of a job or working elsewhere, and its ability to reorganize would have been further seriously impaired.

This Court finds that the Continental Airlines Group filed their respective Chapter 11 proceedings for the purpose of attempting to keep the companies alive and functioning and that they had no other viable alternative to that end. *In Re Continental Airlines Corp.,* 38 Bankr. 67, 70 (Bankr.S.D.Tex.1984).

In that same opinion, this Court found that Continental did not file its Chapter 11 proceeding for the purpose of rejecting its collective bargaining agreements, but was actively trying to keep the airline operational and, hence, provide a source of employment to its workers.

8. This Court has also found:

(1) That Continental has made considerable and reasonable effort to reach agreement with the unions ... for voluntary modification of their respective bargaining agreements, (2) that Continental has bargained in good faith with respect to those efforts ...

Memorandum of Authorities Authorizing Rejection Of The Collective Bargaining Agreement With ALPA (August 17, 1984) at p. 12.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction to rule on Debtors' Motion because bankruptcy courts have jurisdiction to decide all claims against an estate. 28 U.S.C. §§ 1334(a); 157(a), (b)(1), (b)(2)(B).

■ 2. Bankruptcy courts have discretion to resolve claims even if, in the absence of bankruptcy, another tribunal exists for such resolution. *Zimmerman v. Continental Air Lines,* 712 F.2d 55, 56 (3d Cir.1983), *cert. denied,* 464 F.2d 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984).

■ 3. Even if the Court does not have jurisdiction to liquidate the mental anguish claims, it nevertheless has jurisdiction to estimate the value of such claims pursuant to 11 U.S.C. § 502(c). *See* Order Granting Debtors' Motion To Estimate All Contingent Unliquidated Employee Claims for Purposes of Chapter 11 Plan, *In re Continental Airlines Inc.,* 57 B.R. 842 (Bankr.S. D.Tex.1985).

4. Claims for "mental anguish" are necessarily based upon state tort law for intentional infliction of emotional distress. It is well-established that state law claims will be preempted by federal law if the gravamen of the claim is an issue covered by the "minor dispute" provisions of the RLA. *Andrews v. Louisville and Nashville Railroad Company,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) (The procedures for resolving minor disputes under the RLA are mandatory and preempt a "wrongful discharge" claim brought under state law). *Schroeder v. TWA,* 702 F.2d 189 (9th Cir.1983) (Where the factual basis of a claim is governed by collective agreement, a federal question is presented, and state action is preempted). *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978) (Employees' state law claim of intentional infliction of mental distress is preempted). *Woodby*

*v. Louisville and Nashville Railroad,* 473 F.Supp. 502 (E.D.Tenn.1979) (Contractual claim under state law for lost wages preempted by "minor dispute" provisions of the RLA). Unionized claimants are therefore left with remedies under their respective collective bargaining agreements, none of which provide for mental anguish damages under any circumstances.

■ 5. A prima facie case for intentional infliction of emotional distress requires a showing of (1) extreme or outrageous conduct; (2) intent to cause, or reckless disregard for the probability of causing, emotional distress; (3) actual and proximate causation; and (4) the distress suffered was severe. *Melandris v. Merrill Lynch Pierce Fenner & Smith,* 703 F.2d 1152, 1158 (10th Cir.1981), *cert. denied,* 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983) (applying Colorado law); *Koch v. Goldway,* 607 F.Supp. 223 (C.D.Cal.1984); *Automobile Club v. Walters,* 699 S.W.2d 939 (Tex. Civ.App.1985).

■ 6. Courts have imposed strict requirements on the parameters of an action for intentional infliction of emotional distress:

> For the conduct to be considered extreme and outrageous, it must "go beyond all possible bounds of decency and ... be regarded as atrocious, and utterly intolerable in a civilized community."

*Melandris, supra,* 703 F.2d at 1158, *citing Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970). As noted above, Debtors engaged in no conduct which was extreme and outrageous. Debtors' actions were reasonably designed to save the company and were not intended to cause anyone emotional distress. Continental did all it could to avoid bankruptcy, but by September 24, 1983 it had no alternative but to file these Chapter 11 proceedings. Once the Chapter 11 petition had been filed, Continental became a debtor-in-possession with a fiduciary obligation to preserve and conserve the assets of the estate. Continental hence faced an immediate and compelling need to conserve its available cash by re-

ducing its operating costs to the bare minimum necessary to sustain ongoing operations. These actions, required by the policies of the Bankruptcy Code, may not also amount to actionable torts. The policies and dictates of the Bankruptcy Code take precedence and preempt state tort law, as required by the Supremacy Clause of the United States Constitution. *Nash v. Florida Industrial Commission*, 389 U.S. 235, 239–40, 88 S.Ct. 362, 366, 19 L.Ed.2d 438 (1967).

7. This Court has already expressly found compelling business justifications for Continental's actions in September of 1983 and has rejected a claim by the unions that Continental acted in bad faith in implementing new work rules on September 24. The changes in wages, work rules and working conditions for Continental employees were not outrageous because they were approved as legal and proper by this Court's June 19, 1984 and December 5, 1984 decisions allowing the rejection of the collective bargaining agreements with ALPA and UFA, respectively. In accordance with *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), this Court held that the changes in wage rates and work rules implemented by Continental on September 24, 1983 were "accomplished not by the employer's unilateral action, but rather *by operation of law.*" Memorandum Of Authorities Authorizing Rejection Of ALPA Collective Bargaining Agreement at 35 (emphasis in original). Obviously, circumstances arising "by operation of law" cannot support an allegation of intentional outrageous conduct.

8. As a matter of law, the type of emotional distress necessary to state a cause of action for intentional infliction of emotional distress is not present in the case at bar. Severe emotional distress has been defined as follows:

> By the term emotional distress is meant any highly unpleasant mental reactions, such as extreme grief, shame, humiliation, embarrassment, anger, disappointment, worry. By severe is meant that the distress inflicted is so extreme that no reasonable man could be expected to endure it without undergoing unreasonable suffering.

*Tidelands Automobile Club v. Walters*, 699 S.W.2d 939, 943 (Tex.Civ.App.1985).

9. Every employee with a grievance will have some degree of emotional distress. *See Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir.1978). Such distress is unavoidable in the loss or change of employment. Clearly, this common anxiety is not the type of "severe" emotional distress necessary to form the basis of a tort action for intentional infliction of emotional distress.

10. This motion presents a pure issue of law—whether employees are entitled to damages for mental anguish resulting from a reduction in wages and benefits or the loss of their employment.

11. No affidavits or other admissible evidence have been offered to establish that there is a genuine dispute as to any material fact. Because this Court is persuaded that Continental is entitled to judgment as a matter of law, summary judgment disallowing claims for mental anguish is appropriate and will be granted. *See* Fed.R. Civ.P. 56(e).

12. For the foregoing reasons, the claims for mental anguish damages will be disallowed pursuant to 11 U.S.C. § 502(b)(1) and estimated to have zero value pursuant to 11 U.S.C. a 502(c).

The above Findings and Conclusions are hereby made a part of and incorporated in the attached Order Granting Debtors' Motion To Disallow And Estimate At Zero Value Claims For Mental Anguish.